**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Jorge Mario CARDONA,**
**Defendant-Appellant.**

No. 84–5191.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 9, 1985.

Decided Aug. 23, 1985.

---

Fred D. Friedman, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Stanley I. Greenberg, Los Angeles, Cal., for defendant-appellant.

Before KENNEDY, HUG, and FERGUSON, Circuit Judges.

HUG, Circuit Judge:

Jorge Mario Cardona appeals following his entry of conditional pleas of guilty to two counts of possession of cocaine with intent to distribute. The district court denied Cardona's motion to suppress the testimony of a customs agent regarding the interception and inspection of a Federal Express package sent from California to Colombia via Miami and Cardona's motion to suppress the fruits of the search of two storage lockers rented by Cardona. We affirm.

## FACTS AND PROCEEDINGS BELOW

In June 1983, Leo Becker, an employee at Algert's Appliance Company in Bell, California, informed United States Customs Agent Alan Doody that Sergio Urrutia, a fellow employee, had been sending currency and/or cashier's checks to Florida and Colombia on behalf of Cardona and some other Colombian nationals. In mid-July, Agent Doody learned that the Drug Enforcement Agency ("DEA") was investigating Cardona for suspected involvement in a Colombian drug organization.

On September 20, 1983, Becker called Agent Doody and informed him that Urrutia was preparing a Federal Express package containing approximately 15 cashier's checks to be sent to Colombia on behalf of Cardona. Agent Doody established a surveillance outside of Algert's and observed another Algert's employee, who Becker believed was assisting Urrutia, walk to a nearby bank and purchase cashier's checks. Becker told Agent Doody these cashier's checks were to be included in the Federal Express package being prepared.

Later that day, Agent Doody observed a Federal Express truck pick up two parcels at Algert's, followed the truck to its next stop, and requested to see the two parcels that had been picked up at Algert's. One was destined for Florida; the other was to go to Miami via Federal Express and then to Colombia via Tampa Express. Agent Doody opened the package destined for Colombia and photocopied 12 cashier's checks totalling $20,000. Since the checks were not in bearer form, there was no violation of the currency reporting requirements; therefore, Agent Doody returned the checks to Federal Express for shipment.

In March of 1984, DEA agents obtained search warrants for an apartment and two storage lockers rented by Cardona under aliases. The warrants were based on alle-

gations contained in an affidavit presented to the magistrate by DEA Agent Granados. Agent Granados' affidavit contained circumstantial evidence indicating that Cardona used the storage lockers to store drugs. Large amounts of cocaine, cocaine paraphernalia, packaging material, and a loaded rifle were found in the lockers when the search warrant was executed.

At a pretrial hearing, the district court ruled that Agent Doody could testify as to his observations of the contents of the Federal Express package because the search was a valid border search, but that the photocopies could not be introduced because the cashier's checks were not subject to seizure. With respect to the searches of the storage lockers, the district court denied Cardona's motion to suppress, stating that the search warrant affidavit disclosed sufficient circumstances to justify the issuance of the warrants for the storage lockers.

## STANDARD OF REVIEW

We review *de novo* the district court's determination that the warrantless search of the Federal Express package was a valid border search. *See United States v. McConney,* 728 F.2d 1195, 1202 (9th Cir.) (en banc), *cert. denied,* —— U.S. ——, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984). We review the trial court's determination that the affidavit was sufficient to provide probable cause under the clearly erroneous standard. *United States v. Estrada,* 733 F.2d 683, 684 (9th Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 168, 83 L.Ed.2d 103 (1984).

## DISCUSSION

I. Validity of Search of Federal Express Package

A. *Extended Border Search Doctrine*

The district court found that Agent Doody's search of the Federal Express package constituted a valid exit border search. Under the border search exception, a search may be initiated without a warrant, probable cause, or even articulable suspicion. *United States v. Ramsey,*

431 U.S. 606, 618–19, 97 S.Ct. 1972, 1979–80, 52 L.Ed.2d 617 (1977); *United States v. Des Jardins,* 747 F.2d 499, 502 (9th Cir. 1984). While the border search exception traditionally has been applied only to persons or property entering the country, we have recently confirmed the application of the border search exception to exit searches. *Des Jardins,* 747 F.2d at 503.

A border search need not take place at the actual border. Because of the nature of international travel and transportation, courts have held that border searches may be conducted at places considered the "functional equivalent" of a border. *Almeida-Sanchez v. United States,* 413 U.S. 266, 273, 93 S.Ct. 2535, 2539, 37 L.Ed.2d 596 (1973); *United States v. Duncan,* 693 F.2d 971, 977 (9th Cir.1982), *cert. denied,* 461 U.S. 961, 103 S.Ct. 2436, 77 L.Ed.2d 1321 (1983). In addition, the "extended border search" doctrine has been applied to entry border searches conducted some time after the border was crossed. *United States v. Caicedo-Guarnizo,* 723 F.2d 1420, 1422 (9th Cir.1984); *United States v. Espericueta-Reyes,* 631 F.2d 616, 619 (9th Cir.1980).

In the present case, the search of the Federal Express package did not occur at the actual border, but rather 3,000 miles from the border and twenty-four hours before the scheduled border crossing. Consequently, if the search is to be upheld, it must either have been conducted at the functional equivalent of the border or have constituted a valid extended border search. We have recently recognized the difficulty of making sharp distinctions between searches at the functional equivalent of the border and extended border searches. *United States v. Alfonso,* 759 F.2d 728, 734 (9th Cir.1985). Since an extended border search involves a greater spatial and temporal distance from the border than a search at the functional equivalent of the border, it must be justified by a "reasonable suspicion" of criminal activity. *Id.* Considering the distance and time factors of the present case, we conclude that the

facts of this case should be analyzed under the extended border search doctrine. *See id.* (where entry search occurred thirty-six hours after border was crossed, court treats search as extended border search).

The leading case in this circuit on extended border searches is *Alexander v. United States*, 362 F.2d 379 (9th Cir.), *cert. denied*, 385 U.S. 977, 87 S.Ct. 519, 17 L.Ed.2d 439 (1966). There, the court stated the test for determining the validity of a post-entry border search:

> Where ... a search for contraband ... is not made at or in the immediate vicinity of the point of international border crossing, the legality of the search must be tested by a determination whether the totality of the surrounding circumstances, including the time and distance elapsed as well as the manner and extent of surveillance, are such to convince the fact finder with reasonable certainty that any contraband which might be found in or on the vehicle at the time of search was aboard the vehicle at the time of entry into the jurisdiction of the United States. Any search by Customs officials which meets this test is properly called a "border search."

*Alexander*, 362 F.2d at 382.

The search in the present case satisfies the *Alexander* totality of the circumstances test. When the parcel was placed in the custody of Federal Express agents, it was all but certain that the parcel's condition would remain unchanged until it crossed the United States border. *Cf. United States v. King*, 517 F.2d 350 (5th Cir.1975) (where court upheld a search at an Alabama post office of mail which crossed the border in California as a search conducted at the functional equivalent of the border). The fact that this case involves an exit search does not alter our analysis. Since the border search exception applies to exit searches, there is no principled basis to conclude that the extended border search doctrine does not apply with equal force to exit searches as it does to entry searches.

In addition, Agent Doody's search of the parcel was supported by reasonable suspicion of criminal activity. Leo Becker, Cardona's co-employee, had informed Doody that another employee, Sergio Urrutia, had been sending currency or cashier's checks to Florida and Colombia on behalf of Cardona and others. Doody later learned that the DEA was investigating Cardona for suspected involvement in a Colombian drug organization. Together with Doody's observations, these facts established a reasonable suspicion that the parcel contained cashier's checks for the purchase of narcotics.

### B. *Fourth Amendment Reasonableness Requirement*

The fourth amendment requires that a valid exit border search be conducted in a "reasonable" manner. *Des Jardins*, 747 F.2d at 504–05; *Duncan*, 693 F.2d at 977. The scope of the search, the manner of its conduct, and the justification for its initiation must all be considered in determining whether a search is reasonable. *Duncan*, 693 F.2d at 977.

As the search of the Federal Express package was a valid extended border search, its initiation was reasonable. It follows that, as the district court held, Agent Doody's observations during the search are admissible evidence. The district court found, however, that Agent Doody's photocopies of the cashier's checks must be suppressed. We agree. When Agent Doody opened the parcel, he discovered that its contents were not subject to seizure. Nonetheless, he photocopied the cashier's checks before returning them to Federal Express for shipment. Because this seizure and detention of the checks was unjustified, it did not comport with the fourth amendment's reasonableness requirement. The district court was therefore correct in concluding that the photocopies are inadmissible.

Cardona contends that the district court erred in ruling that Agent Doody could testify about what he observed during his search of the package because its

**630**

contents were not subject to seizure. However, evidence which is obtained by means sufficiently distinguishable from an illegal source is admissible. *Segura v. United States,* — U.S. —, 104 S.Ct. 3380, 3391, 82 L.Ed.2d 599 (1984); *United States v. Moreno,* 758 F.2d 425, 427 (9th Cir.1985). In the present case, after Agent Doody opened the Federal Express package, he had to examine the cashier's checks with some care to determine whether they were seizable. We agree with the district court that these observations were independent from any information obtained from the illegal seizure, and that they need not be suppressed.

**II. Probable Cause to Search Storage Lockers**

Cardona concedes the affidavit contained sufficient information to justify the search of his apartment. However, he contends the affidavit did not establish probable cause to search the two self-storage lockers he rented.

■■■ To sustain the warrants in this case, Agent Granados' affidavit must contain sufficient evidence to support an inference that drugs might be found in Cardona's self-storage lockers. *United States v. Foster,* 711 F.2d 871, 877 (9th Cir.1983), *cert. denied,* — U.S. —, 104 S.Ct. 1062, 80 L.Ed.2d 132 (1984). The affidavit may establish a sufficient connection between Cardona's illegal drug transaction, the drugs themselves, and the rented storage lockers, even though they have not been tied by direct evidence. *United States v. Hicks,* 752 F.2d 379, 383 (9th Cir.1985); *Foster,* 711 F.2d at 878. Further, Agent Granados's opinion, based on experience, that evidence of Cardona's drug dealings would be found at the rented storage lockers, is an important factor to be considered in determining whether probable cause existed. *Foster,* 711 F.2d at 878.

■■ In the search warrant affidavit, Agent Granados briefly outlined his 13 years of experience as a DEA agent, described certain patterns of behavior he had found to be typical of members of Colombi-

an drug organizations, and recounted numerous incidents which indicated Cardona was a drug dealer and which linked his apartment to his drug business. Agent Granados stated that members of Colombian drug organizations typically keep drugs in self-storage lockers, like those rented by Cardona, which are within driving distance from their apartment. Although Agent Granados did not state that DEA agents observed Cardona removing anything from or placing anything into the lockers, he did describe a number of events and transactions which strongly suggested Cardona was exchanging packages of drugs that had been stored in the subject lockers. Therefore, the magistrate reasonably concluded that it was probable that evidence would be found in the storage lockers.

AFFIRMED.