**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**George WHITING, and Theodore
Whiting, Defendants-Appellees.**

**No. 85–1088.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 14, 1985.

Decided Jan. 23, 1986.

George L. O'Connell, Asst. U.S. Atty., Sacramento, Cal., for plaintiff-appellant.

Malcolm Segal, Sacramento, Cal., for defendants-appellees.

Before: ANDERSON, and PREGERSON, Circuit Judges, and TASHIMA,* District Judge.

PREGERSON, Circuit Judge.

The district court granted defendants' motion to suppress evidence seized by the Department of Commerce in a search of packages deposited in the mail by defendants' company for overseas shipment. On appeal the government contends that the court erred in holding that: (1) the search was not a valid "border search;" and, (2) the search was not within the "good faith" exception to the fourth amendment's exclusionary rule under *United States v. Leon*, —— U.S. ——, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). We affirm.

## BACKGROUND

In 1982, the Department of Commerce ("Commerce") started to investigate Western Engineers, a Sacramento company owned by defendants George and Theodore Whiting. Commerce had learned that Western Engineers was exporting electronic components from the United States in violation of the Export Administration Act

* Hon. A. Wallace Tashima, United States District Judge, Central District of California, sitting by designation.

of 1979 ("EAA").[1] Brooks Ohlson, an agent of the Department of Commerce, Office of Export Enforcement ("OEE"),[2] who had been with the OEE for two months, was assigned to the matter.

By January 1983, OEE agent Ohlson determined that the Whitings were regularly shipping electronic components from Elk Grove, California to Switzerland without the export licenses required by the EAA. He then decided to inspect outgoing packages at the Elk Grove Post Office to determine if they contained licensable goods. The local postal authorities advised agent Ohlson that he needed a warrant to search the packages. Ohlson obtained this warrant from a Federal Magistrate based on Ohlson's affidavit which simply cited Commerce regulations. Ohlson then searched several packages mailed by Western Engineers and found assorted microcircuits and electronic components. Ohlson placed three of these packages in the Postal Inspector's vault in Sacramento. On January 14, 1983, Ohlson obtained a second warrant and seized several more packages.

Based on evidence obtained from these searches, Ohlson (along with other Commerce agents and a Federal Marshal) sought and obtained from a Federal Magistrate a search warrant for the Western Engineers business premises. A search there disclosed business records indicating illegal export of licensable commodities.

Ohlson seized these records and at that time informed the Whitings of his previous seizures of packages mailed at the Elk Grove post office.

A federal grand jury indicted the Whitings for conspiracy, unlawful export of high technology electronic parts, and false statements to a federal agency. The Whitings moved the district court to suppress the evidence seized at the post office and at their business premises, contending that the Elk Grove package search warrants were invalidly issued and the business premises search warrant was overbroad.[3] The government argued before the district court that the package search warrants were valid and, even if the warrants were invalid, the search at the post office was either a valid border search or one permissible under the "good-faith" exception to the fourth amendment's exclusionary rule stated in *United States v. Leon*, — U.S. ——, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).[4] The government stipulated at oral argument on the motion to suppress that if the post office package searches were invalid, the business premises search was also invalid under the "fruit of the poisonous tree" doctrine.[5]

The district court held that the package search warrants were invalid because OEE agent Ohlson was not a "law enforcement officer" authorized to obtain a search warrant under Fed.R.Crim.P. 41(a).[6] The court

1. 50 U.S.C.App. §§ 2401–20. This act endows the Secretary of Commerce with broad powers to impose export controls in pursuit of specified objectives. *Id.* at 2402. Under the Act, a person may not export certain high technology components from the United States without a valid export license obtained from the Department of Commerce. The licensing requirements and procedure are set forth in regulations promulgated under the EAA by the Secretary of Commerce. *See generally,* 15 C.F.R. §§ 370.1–399.1.

2. The Office of Export Enforcement enforces the EAA and the regulations thereunder. 15 C.F.R. §§ 370.2, 387.14. The office "directs the investigation of suspected export control violations for referral for administrative proceedings by the Department of Commerce and criminal prosecution by the Department of Justice." *Id.* at § 370.2.

3. The defendants also moved: to dismiss the indictment; to strike surplusage; for a bill of particulars; and for search and disclosure of electronic or other surveillance. These motions were denied and are not pursued on appeal.

4. The government also argued that even if the warrants were invalid, the search of the packages was a valid warrantless search of a heavily regulated industry. The district court rejected this argument, and it is not pursued on appeal.

5. *See Wong Sun v. United States,* 371 U.S. 471, 486–87, 83 S.Ct. 407, 416–17, 9 L.Ed.2d 441 (1963).

6. The district court held that OEE agent Ohlson did not fall within the definition of "federal law enforcement officers" found in 28 C.F.R. § 60.2. While section 60.2(a) extends warrant authority to "persons authorized to execute search war-

further held that neither the EAA nor regulations promulgated thereunder authorized agent Ohlson to conduct a border search. Finally, the court ruled that the agent had not acted in "good faith" under *Leon.* Because of the government's stipulation, the court also invalidated the search of the business premises. The district court therefore granted defendants' motion to suppress.

On appeal, the government no longer contends that the package search warrants were valid; accordingly, both parties now treat the searches of the packages at the post office as "warrantless" searches.

## ANALYSIS

### A. *Border Search.*

#### 1. *Standard of Review.*

■ A district court's ruling on the validity of a border search is reviewed *de novo. United States v. Cardona,* 769 F.2d 625, 628 (9th Cir.1985).

#### 2. *The "Border Search" Exception.*

■ Searches at international borders require neither a warrant nor probable cause. *United States v. Ramsey,* 431 U.S. 606, 616–17, 97 S.Ct. 1972, 1978–79, 52 L.Ed.2d 617 (1976); *United States v. Soto-Soto,* 598 F.2d 545, 548 (9th Cir.1979). Based on dicta in *California Bankers Association. v. Schultz,* 416 U.S. 21, 63, 94 S.Ct. 1494, 1518, 39 L.Ed.2d 812 (1974), this circuit has extended the "border search" doctrine to searches of persons and things exiting the United States. *See United States v. Duncan,* 693 F.2d 971, 977 (9th Cir.1982), *cert. denied,* 461 U.S. 961, 103 S.Ct. 2436, 77 L.Ed.2d 1321 (1983); *United States v. Stanley,* 545 F.2d 661, 665–67 (9th Cir.1976), *cert. denied,* 436 U.S. 917, 98 S.Ct. 2261, 56 L.Ed.2d 757 (1978). This includes search and seizure of mail leaving the country. *Cardona,* 769 F.2d 625, 629.

#### 3. *Existence of Actual Border Not Required.*

■ Elk Grove, located in the Eastern District of California, is clearly not an international border. A "border search," however, need not take place at the actual border. *See Almeida-Sanchez v. United States,* 413 U.S. 266, 272–73, 93 S.Ct. 2535, 2539, 37 L.Ed.2d 596 (1973). Two separate doctrines extend border searches to points within the international boundary of the United States. The "functional equivalent" doctrine permits border searches at places other than the actual border where travelers functionally enter or exit the country. *Almeida-Sanchez,* 413 U.S. at 273, 93 S.Ct. at 2539; *United States v. Duncan,* 693 F.2d at 977. In addition, the "extended border" doctrine allows border searches to be conducted before or after the border is actually crossed. *See, e.g., United States v. Caicedo-Guarnizo,* 723 F.2d 1420, 1422 (9th Cir.1984). "Extended border" searches are thought to be more intrusive on an individual's legitimate expectation of privacy than searches at the actual border. Accordingly, such searches must be justified by "reasonable suspicion" that the subject of the search was involved in criminal activity. *Cardona,* 769 F.2d at 628–29; *United States v. Alfonso,* 759 F.2d 728, 734 (9th Cir.1985). While the distinction between the two doctrines is often blurred, *Cardona,* 769 F.2d at 628, the "extended border" doctrine is more appropriate in cases like the instant case where the search occurred long before the item searched actually crossed the border. *Id.* at 628–29 (extended border doctrine applies where package searched 3,000 miles from border and twenty-four hours before package was to leave the country); *cf. Alfonso,* 759 F.2d at 734 (search of boat some thirty-six hours after crossing border upheld under extended border analysis).

In *Cardona,* this court applied the "extended border" doctrine to a search similar

rants by a statute of the United States," the court correctly noted that the existing enforcement provisions of the EAA, 50 U.S.C.App. § 2411(a), contained no such grant. Congress recently amended § 2411(a) to give the OEE such authority. Export Administration Amendments Act of 1985, Pub.L. No. 99–64 § 113, Aug. 1985 U.S.Code Cong. & Ad.News (99 Stat.) 120, 149.

to the one involved in the instant case. There, a United States Customs agent searched a parcel delivered to Federal Express in Bell, California for eventual delivery to Colombia. The court upheld the search under the extended border doctrine, noting that "[w]hen the parcel was placed in the custody of Federal Express, it was all but certain that the parcel's condition would remain unchanged until it crossed the United States border." 769 F.2d at 629. The court also noted that reports of criminal activity and the agent's observations established reasonable suspicion that the parcels contained illegally exported items. *Id.*

■ This case is essentially indistinguishable from *Cardona*. Although Elk Grove is far from an international border[7] and the packages shipped by Western Engineers would go through two domestic post offices before leaving the country for Switzerland, the search of the packages, under the extended border doctrine as enunciated in *Cardona,* occurred at a "border."[8] Further, agent Ohlson had reasonable suspicion, based on reports of illegal shipments and his own investigation, that the Whitings were shipping goods in violation of the EAA. The district court there-

fore correctly ruled that the search occurred at the border.

### 4. *Authority to Conduct Warrantless Border Searches.*

■ A warrantless border search is valid only if conducted by officials specifically authorized to conduct such searches. *United States v. Soto-Soto,* 598 F.2d 545, 548–50 (9th Cir.1979). This court has upheld warrantless border searches conducted by the United States Customs Service ("Customs"), Border Patrol, and Coast Guard.[9] *Id.* at 549. A thorough analysis of the EAA and its administrative regulations is necessary to determine whether OEE agents such as Ohlson are similarly authorized to conduct warrantless border searches.

The EAA itself does not expressly provide search and seizure authority.[10] The search and seizure provisions relevant to this case are found in regulations promulgated under EAA by the Secretary of Commerce ("export regulations"). 15 C.F.R. § 386.8(a), entitled "Delegation of authority to customs offices and postmasters", provides:

Customs offices and postmasters, including all customs and post office offi-

---

7. Elk Grove is located approximately 80 miles from the Pacific Ocean, 500 miles from Mexico, and 700 miles from Canada.

8. Because of the distance of Elk Grove from the border and because the packages would possibly not cross the border for several days, it is important in this case, as it was in *Cardona,* that the packages delivered to the postal authorities would remain unchanged before they actually crossed the border. *See Cardona,* 769 F.2d at 629 ("[I]t was all but certain that the parcel's condition would remain unchanged until it crossed the United States border".). We do not suggest that an "extended border" search of such spatial and temporal distance from an actual border crossing would necessarily be valid as to persons or things other than mail.

9. The primary authority for border searches is 19 U.S.C. § 482, which provides in pertinent part:

Any of the officers or persons authorized to board or search vessels may stop, search and examine ... any ... person, on which or

whom he or they shall suspect there is merchandise ... introduced into the United States in any manner contrary to law....

The authority granted by this section is not liberally construed. *See, e.g., Soto-Soto,* 598 F.2d at 550 (suppressing evidence seized by the F.B.I. in purported border search because F.B.I. agents were not "persons authorized" under section 482); *see also United States v. Harrington,* 681 F.2d 612, 614 (9th Cir.1982) ("We enforce [border search] limitations with great care."); *United States v. Vasser,* 648 F.2d 507, 511 n. 3 (9th Cir.1980) ("In *Soto-Soto,* it was necessarily found that a border search not conducted by customs or immigration officers is, by definition, 'unreasonable.' "), *cert. denied,* 450 U.S. 928, 101 S.Ct. 1385, 67 L.Ed.2d 360 (1981); *United States v. Johnson,* 641 F.2d 652, 659 n. 5 (9th Cir.1980) (same).

10. The EAA broadly provides: "To the extent necessary or appropriate to the enforcement of this act, ... any department or agency exercising any functions thereunder ... [may] make such inspection of ... property of ... any person." 50 U.S.C.App. § 2411(a).

cials, are authorized and directed to take appropriate action to assure observance of the provisions of the Export Administration Regulations and of general and validated licenses issued thereunder. This includes, but is not limited to *inspection* of commodities and technical data being exported or about to be exported. The functions delegated to customs offices and postmasters by this paragraph may also be carried out by officials of the Office of Export Enforcement.

(Emphasis added.) Paragraph (b) of section 386.8 describes "[t]ypes of actions which may be taken by customs offices." Among these are examination of "commodities and technical data declared for export." § 386.8(b)(1). Further, section 386.-8(b)(6) provides: "The *customs office* is authorized under [22 U.S.C. § 401[11]] to seize and detain any commodities [exported or suspected of being exported in violation of the EAA]." (Emphasis added.)

▮ The government argues that section 386.8(a) gives to the OEE the search and seizure authority granted to Customs in section 386.8(b)(6). The search and seizure authority of section 386.8(b), however, is expressly limited to the "customs office." The section simply acknowledges existing search authority of Customs. Specifically, section 386(b)(6) refers to the border search authority already granted Customs in 22 U.S.C. § 401; it does not actually grant such authority to Customs. Moreover, section 386.8(a)'s delegation to the OEE of authority held by Customs is limited to those functions "delegated by this paragraph." This would seem to limit the OEE's authority to conducting an "inspection" under section 386.8(a) and would not extend to the search and seizure provisions of section 386.8(b). Nowhere in the EAA or the export regulations is the OEE expressly given the power to conduct border searches.

The conclusion that the OEE is not authorized to conduct warrantless border searches is supported by recent amendments to the EAA found in the Export Administration Amendments Act of 1985, Pub.L. No. 99–64, Aug. 1985 U.S.Code Cong. & Ad.News (99 Stat.) 120.[12] This Act extensively amended the vague enforcement provisions of 50 U.S.C.App. § 2411. Revised section 2411 specifically extends search and seizure authority only to Customs; the OEE is delegated other authority.[13]

---

**11.** This section authorizes Customs to make border searches where "arms or munitions of war or other articles are intended to be or are being or have been exported or removed from the United States in violation of law." *See United States v. Ajlouny*, 629 F.2d 830, 834–36 & n. 4 (2d Cir.1980), *cert. denied*, 449 U.S. 1111, 101 S.Ct. 920, 66 L.Ed.2d 840 (1981).

**12.** While not conclusive, subsequent amendatory acts, and their legislative history, are useful in construing prior legislation. *See Bell v. New Jersey and Pennsylvania*, 461 U.S. 773, 784, 103 S.Ct. 2187, 2194, 76 L.Ed.2d 312 (1983); *Russ v. Wilkins*, 624 F.2d 914, 924–25 (9th Cir. 1980), *cert. denied*, 451 U.S. 908, 101 S.Ct. 1976, 68 L.Ed.2d 296 (1981).

**13.** The amendments provide:
2(A) [T]he United States Customs Service is authorized to search, detain ... and seize goods or technology at those points of entry or exit from the United States where officers of the Customs Service are authorized by law to conduct such searches, detentions and seizures....
....

2(B) An officer of the United States Customs Service may
....
(ii) Search any package or container in which such officer has reasonable cause to suspect there are any goods or technology [being illegally exported]....
Export Administration Amendments Act of 1985, Pub.L. No. 99–64 § 113(a)(5), Aug. 1985 U.S.Code Cong. & Ad.News (99 Stat.) 120, 148–49. The OEE's authority under the revised section is limited to executing warrants, making arrests without a warrant, and carrying firearms. *Id.* at 149.
The legislative history, noting that the amendments were intended to "clarify as precisely as possible ... the relationship between the Department of Commerce and the customs service in enforcing [the EAA]," further emphasizes that search and seizure authority extends to Customs and not Commerce. H.Conf.Rep. No. 99–180, Joint Explanatory Statement of the Committee of Conference, *reprinted in* Aug. 1985 U.S.Code Cong. and Ad.News 108, 124.

■ Thus, a fair reading of the EAA, the export regulations, and Congress' recent express delegation of search and seizure authority to Customs indicates that OEE agent Ohlson did not have authority to search and detain the packages at the Elk Grove post office. The district court correctly ruled that Ohlson's search and seizure of the packages was an unauthorized, and therefore an invalid, border search.[14] *See Soto-Soto,* 598 F.2d at 550.

### B. "Good Faith" Exception.

#### 1. Standard of Review.

■ The issue whether the "good-faith" exception to the fourth amendment's exclusionary rule might apply to this case involves the selection of a rule of law and is thus reviewed *de novo. See United States v. McConney,* 728 F.2d 1195, 1200 (9th Cir.) (en banc), *cert. denied,* — U.S. —, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

#### 2. The "Good-Faith" Exception

In *United States v. Leon,* 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), the Supreme Court established the so-called "good faith exception" to the exclusionary rule. The Court held that evidence obtained pursuant to a search warrant issued by a neutral magistrate later invalidated for lack of probable cause should not be suppressed if the searching officer acted in reasonable reliance on the warrant. *Leon,* 104 S.Ct. at 3421-22 (1984); *United States v. Merchant,* 760 F.2d 963, 968 (9th Cir.1985). The government argues that even if the search of the packages at the post office was not a valid border search because the

OEE lacked authority to conduct such searches, the evidence obtained from the search is admissible under *Leon* because Ohlson reasonably believed that the export regulations authorized his search.

*Leon,* however, expressly involved good faith reliance on a warrant issued by a judicial officer later held to be unsupported by probable cause. As noted above, the government treats the search of the packages in this case as a "warrantless" search. It therefore does not assert that Ohlson reasonably relied on the warrants invalidated because Ohlson was not an authorized "law enforcement officer." The government apparently recognizes that *Leon* does not apply to search warrants issued to people who are not permitted to obtain such warrants.

■ Rather than asserting that Ohlson reasonably relied on a *warrant,* the government argues that *Leon* applies because of Ohlson's reliance on the export *regulations.* The government, relying on general language in *Leon* which talks about weighing the benefits of suppression against its costs,[15] apparently suggests that a "good-faith" exception applies to all illegal searches. The *Leon* exception, however, is clearly limited to warrants invalidated for lack of probable cause and does not create the broad "good faith" exception the government suggests. *See Leon,* 104 S.Ct. at 3419-24. The *Leon* rule should therefore not be applied to invalid warrantless searches. *See United States v. Miller,* 769 F.2d 554, 560 n. 5 (9th Cir.1985) ("We do not see how [*Leon's*] good faith exception for reasonable reliance on invalid warrants has any application to the warrant-

---

**14.** The government argues that even if the OEE is not specifically authorized to conduct warrantless border searches, the "general structure" of the EAA and export regulations provide such authority. The government's reliance on *Balelo v. Baldridge,* 724 F.2d 753 (9th Cir.) (en banc), *cert. denied,* — U.S. —, 104 S.Ct. 3536, 82 L.Ed.2d 841 (1984), for this proposition is unpersuasive. *Balelo* did not address border searches; it involved a warrantless search pursuant to the "heavily regulated industry" exception. *Id.* at 764-65.
Further, the regulations in *Balelo,* in contrast to the export regulations involved in this case, spe-

cifically authorized the "searches." *Id.* at 757. Finally, the court noted that "effective implementation of [the Act] would be impossible without [the search]." *Id.* at 760. No such necessity exists in this case because Customs has full authority to conduct warrantless border searches of outgoing packages under the export regulations and 22 U.S.C. § 401.

**15.** *See, e.g.,* 104 S.Ct. at 3412 ("[The question of whether suppression is appropriate] must be resolved by weighing the costs and benefits.").

less search involved in the instant case"); *United States v. Morgan,* 743 F.2d 1158, 1165 (6th Cir.1984), *cert. denied,* 105 S.Ct. 2126, 85 L.Ed.2d 490 (1985) (refusing to extend *Leon* to a warrantless search which the government argued fell under the "exigent circumstances" exception); *see also Merchant,* 760 F.2d at 968 n. 6 ("In analyzing this case under *Leon,* we do not suggest that the good faith exception applies beyond the warrant context").[16]

## CONCLUSION

■■ While the Elk Grove, California post office is properly considered a border under the "extended border" doctrine, OEE agent Ohlson's warrantless search of the packages mailed by Western Engineers was an unauthorized border search. The Export Administration Act does not give the Department of Commerce agents the power to conduct border searches; rather, the Act and regulations thereunder only grant Commerce the authority to inspect. While the scope of this authority is unclear, it does not encompass the search and seizure of outgoing packages.[17] The government's claim of "good faith" is unavailing because *Leon* does not apply to warrantless border searches and, in any event, Ohlson did not act in good faith because a reasonable OEE agent would have known that he or she had no authority to conduct such a search. Accordingly, the district court properly suppressed the evidence.

AFFIRMED.

---

16. Further, even if *Leon* applies, it appears that agent Ohlson did not act in good faith. "Reasonable reliance" under *Leon* is an objective standard that requires an officer to have reasonable knowledge of his authority. *Leon,* at 3419–20 & n. 20. ("The objective standard we adopt ... requires officers to have a reasonable knowledge of what the law prohibits."); *United States v. Savoca,* 761 F.2d 292 (6th Cir.), *cert. denied,* — U.S. —, 106 S.Ct. 153, 88 L.Ed.2d 126 (1985) ("*Leon* indicated that courts evaluating an officer's conduct must charge the officer with a certain minimum level of knowledge...."); *see also Merchant,* 760 F.2d at 969. Although the delineation of enforcement authority between Customs and Commerce was somewhat ambiguous, the OEE did not have authority to search and seize outgoing packages, In fact, Ohlson admitted he had no authority to detain the packages.

The district court was persuaded that Ohlson did not act in good faith. Under this court's en banc decision in *McConney,* this would appear to be a "state of mind" determination which we review under the clearly erroneous standard. 728 F.2d at 1203–04. We recently held in *Merchant,* however, that the issue of good faith under *Leon* is reviewed *de novo.* 760 F.2d at 969. We hold that for the reasons discussed above, the district court's determination that Ohlson did not act in good faith was correct under either standard.

17. The government contends that Ohlson's "inspection" authority included opening and examining packages. It views the district court's opinion as invalidating the seizure of the Elk Grove packages but not their "inspection." In this manner it seeks to avoid its "poisonous tree" stipulation below; it contends that even if the evidence *seized* could not be used to obtain the business premises search warrant, the "information" learned in "inspecting" the packages was sufficient to support that warrant.

Even if the government is correct in characterizing the search of the packages as an inspection authorized by the export regulations, it would still violate the fourth amendment. Warrantless inspections which constitute searches, even if authorized by statute, must still fall under one of the exceptions to the warrant requirement. *See Michigan v. Clifford,* 464 U.S. 287, 104 S.Ct. 641, 78 L.Ed.2d 477 (1984) (post-fire inspection requires warrant or "exigency"); *Marshall v. Barlow's, Inc.,* 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978) (striking down warrantless OSHA inspections); *Rush v. Obledo,* 756 F.2d 713, 718 (9th Cir.1985) (warrant or exception required to conduct inspections of day-care facilities); *Balelo,* 724 F.2d at 764 (inspection of fishing vessels, even if a "search," permissible under "heavily regulated" industry exception). As opening and examining the packages was clearly a search, *see, e.g., United States v. Cardona,* 769 F.2d 625 (9th Cir.1985), such a warrantless search is invalid because it did not fall under the "border search" exception, which extends only to Customs, the Coast Guard and the Border Patrol, or any other recognized exception to the fourth amendment's warrant requirement.