838 F.2d 468
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Princess Biodun Omoreha OGUNFEYIMI, Defendant-Appellant.
 Nos. 87-5519, 87-5520.
 United States Court of Appeals, Fourth Circuit.
 Argued: Nov. 6, 1987.
Decided: Jan. 12, 1988.
 
 David Benjamin Smith (Gregory Bruce English; English & Smith, on brief), for appellants.
 Sandra Ann Strempel, Special Assistant United States Attorney (Henry E. Hudson, United States Attorney; Lawrence J. Leiser, Assistant United States Attorney, on brief), for appellee.
 Before WIDENER, SPROUSE, and WILKINSON, Circuit Judges.
 PER CURIAM:
 
 
 1
 Princess Biodun Ogunfeyimi and Prince Henry Ogunfeyimi challenge their convictions for currency law violations and conspiracy to distribute heroin. We affirm.
 
 
 2
 On October 6, 1986, Princess Ogunfeyimi, a Nigerian citizen, paid over $1,000 cash for three round trip airline tickets for a flight from Dulles International Airport to London's Heathrow Airport. Princess Ogunfeyimi pulled the cash, consisting primarily of ten, five, and one dollar bills, from a diaper. The British Airways ticket agent who made the sale told the United States Customs that a considerable amount of money remained in the diaper after Princess Ogunfeyimi purchased her tickets.
 
 
 3
 On October 9, 1986, Customs agents examined British Airways passenger lists and discovered that Princess Ogunfeyimi had reservations on a flight scheduled to depart at 8:15 p.m. that evening. In the afternoon, a Customs agent checked the agency's computer and found no record of Princess Ogunfeyimi having filed a "Report of International Transportation of Currency or Monetary Instruments" (CMIR). At approximately 6:10 p.m., Customs agents learned that Princess Ogunfeyimi, two small children, and a man had arrived at the airport. The man later turned out to be her husband, Henry Ogunfeyimi, the other defendant in this case. Princess Ogunfeyimi checked two pieces of luggage bearing her name and the address of the Ogunfeyimis' home in Maryland. The British Airways employee who checked Princess Ogunfeyimi's luggage gave her a pamphlet explaining the currency reporting requirements and told her the importance of reading it before boarding the flight.
 
 
 4
 Customs officers searched the two pieces of luggage at approximately 6:30 p.m. They discovered $107,785 in small-denomination bills in a suitcase. At approximately 7:00 p.m., a dog trained in drug detection alerted to both the suitcase and the currency.
 
 
 5
 Customs agents observed both Princess and Henry Ogunfeyimi over the next four hours as they waited for her and the children's flight. A Customs inspector broadcast two announcements over the airport loudspeaker concerning the requirement to report the transportation of over $10,000 out of the United States. Henry Ogunfeyimi appeared to the agents to be acting nervously. Neither defendant made an effort to file a CMIR up to flight time.
 
 
 6
 Princess Ogunfeyimi was arrested by Customs as she boarded the lounge vehicle carrying passengers to the aircraft. A subsequent search of her disclosed a $5,000 cashier's check payable to "H.M. Ogunfeyimi", a deposit slip for a Nigerian bank filled out to $50,000 in unknown currency, and approximately $1,000 in U.S. Currency. The passports of Princess Ogunfeyimi and her two children showed numerous short trips through London to Nigeria during the past eighteen months.
 
 
 7
 Upon the advice of an Assistant United States Attorney, Customs agents placed Henry Ogunfeyimi under arrest for aiding and abetting Princess Ogunfeyimi's currency violation. A subsequent search of Henry Ogunfeyimi's shirt pocket uncovered the Customs form containing the currency reporting requirement which had previously been given to Princess Ogunfeyimi. Soon thereafter, Henry Ogunfeyimi made a voluntary statement that the currency was his.
 
 
 8
 Customs agents obtained a search warrant for Princess and Henry Ogunfeyimi's Maryland home on October 12, 1986. The search revealed a suitcase containing approximately $20,000 cash and microscopic traces of heroin and procaine, a cutting agent for heroin and cocaine. Customs also seized a briefcase containing financial documents and microscopic traces of lidocaine, another cutting agent. Other items discovered included a triple beam scale, an anti-bugging device, a beeper, documentation of several bank accounts, and receipts for merchandise indicating that the defendants purchased approximately $25,600 worth of goods in cash during the past twenty-two months.
 
 
 9
 Following a three-day jury trial in December of 1986, Henry and Princess Ogunfeyimi were convicted of conspiracy to transport monetary instruments in an amount exceeding $10,000 without filing a CMIR, in violation of 31 U.S.C. Sec. 5322 and 18 U.S.C. Sec. 371 (Count 1), failing to file the CMIR in violation of 31 U.S.C. Sec. 5316 (Count 2), and conspiracy to distribute and possess with intent to distribute a kilogram or more of heroin, in violation of 21 U.S.C. Secs. 841(a)(1) and 846 (Count 3). The Ogunfeyimis challenge the searches undertaken by the government agents, Henry Ogunfeyimi's arrest, the evidence presented against them at trial, the sufficiency of the evidence, and the prosecution's conduct.
 
 
 10
 At the time of the Ogunfeyimis' arrests, the authority of Customs officers to undertake warrantless searches of outbound luggage for suspected currency law violations was provided in 31 U.S.C. Sec. 5317(b) (Supp. III 1985). The law required Customs officers undertaking such a search to have "reasonable cause to believe there is a monetary instrument being transported in violation of section 5316 of this Title [CMIR filing requirement]." Princess Ogunfeyimi argues that customs lacked reasonable cause for the search of her luggage. We disagree. Princess Ogunfeyimi was awash with small denomination cash when she made her curious purchase of a ticket abroad. These facts provided a "particularized and objective basis" for searching her luggage for the currency reporting violation. See United States v. Cortez, 449 U.S. 411, 417 (1981). Nor was this search subject to the fourth amendment's requirement of a warrant based on probable cause, as Princess Ogunfeyimi argues. See United States v. Whiting, 781 F.2d 692, 695 (9th Cir.1986).
 
 
 11
 Henry Ogunfeyimi was arrested as he drove away from Dulles Airport. He urges that his presence with Princess Ogunfeyimi at the airport did not constitute probable cause for his arrest. Probable cause, however, "requires only a probability or substantial chance of criminal activity ....[I]nnocent behavior will frequently provide the basis for a showing of probable cause ...." Illinois v. Gates, 462 U.S. 213, 243 n.13 (1983). Here, experienced Customs agents observed the behavior of Henry Ogunfeyimi with Princess Ogunfeyimi for four hours, and the agents properly concluded that they had probable cause to arrest Henry Ogunfeyimi, judged by the totality of the circumstances. See United States v. Manbeck, 744 F.2d 360, 376 (4th Cir.1984); Illinois v. Gates, 462 U.S. at 238.
 
 
 12
 Customs agents searched the Ogunfeyimi residence in Maryland for approximately three hours on October 12, 1986. Their warrant, supported by an affidavit discussing the evidence obtained pursuant to the airport arrests, authorized a search for evidence of violations of the currency reporting law. The warrant described a search for, among other items, financial records, receipts, and documents of identification. The agents collected three boxes of documents as well as the cash-laden suitcase and other items discussed above. Due to the unsanitary condition of the house and volume of records seized, the agents sorted through the items in government offices and made irrelevant documents available to the defendants in subsequent weeks leading up to the motions hearing on December 5, 1986.
 
 
 13
 We first disagree with the Ogunfeyimis' contention that the warrant was so overbroad and lacking in probable cause as to preclude reliance on it by the Customs officers. The warrant was not "so facially deficient--i.e., in failing to particularize the place to be searched or the things to be seized--that the executing officers [could] not reasonably presume it to be valid." United States v. Leon, 468 U.S. 897, 923 (1984). Nor was the warrant " 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.' " Id. (quoting Brown v. Illinois, 422 U.S. 590, 610-11 (1975) (Powell, J., concurring in part)).
 
 
 14
 The Ogunfeyimis argue alternatively that the execution of the search grossly exceeded the mandate of the warrant and was thus an illegal general search. We must gauge the warrant's execution, however, in light of the condition of the searched premises. The house was in unsanitary disarray, cluttered with dirty diapers and other garbage. Under the circumstances, a wider ranging search was necessary to isolate the items described in the warrant, and we do not feel that the search for financial records deteriorated into a " 'general, exploratory rummaging in a person's belongings' proscribed by the fourth amendment." United States v. Fawole, 785 F.2d 1141, 1144 (4th Cir.1986) (quoting Coolidge v. New Hampshire, 403 U.S. 443, 467 (1971)).
 
 
 15
 The Ogunfeyimis also argue that the government failed to prove beyond a reasonable doubt that the CMIR was not filed by or on behalf of Princess Ogunfeyimi, and that the government failed to prove Henry Ogunfeyimi's involvement in currency law violations. They also contend that the evidence failed to show a conspiracy to distribute a kilogram or more of heroin.
 
 
 16
 Our review is limited to "whether, viewing the evidence in the light most favorable to the government, any rational trier of facts could have found the defendant guilty beyond a reasonable doubt. We must consider circumstantial as well as direct evidence, and allow the government the benefit of all reasonable inferences from the facts proven to those sought to be established." United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir.1982). Under this standard, we find the evidence sufficient. Henry Ogunfeyimi's complicity is amply demonstrated by his actions at the airport and his claim of ownership of the currency in question.
 
 
 17
 The heroin conspiracy is substantiated by the trace evidence of heroin and cutting agents found in the Ogunfeyimi residence as well as the $137,785 in their possession. A veteran drug enforcement officer testified that this sum could purchase one and one-half kilograms of heroin. Other evidence included the Ogunfeyimis' extensive shuttling abroad and their possession of a triple beam scale, an anti-bugging device, and a telephone beeper.
 
 
 18
 Finally, the Ogunfeyimis claim they were unfairly prejudiced by the testimony of a police expert and by remarks in the government's opening statement and in its rebuttal argument. We conclude that the trial judge's decision to allow the expert testimony was not an abuse of discretion, see Scott v. Sears, Roebuck & Co., 789 F.2d 1052, 1055 (4th Cir.1986), and that any error in the rulings concerning the remarks of the prosecution were harmless beyond a reasonable doubt, see United States v. Hasting, 461 U.S. 499, 510 (1983). Most of the disputed prosecutorial remarks prompted defense objections, which were sustained by the court and followed by curative instructions.
 
 
 19
 AFFIRMED.