21 F.3d 1117
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Mario Antonio MACHADO-MARTINEZ and Rene Roberto Luna-Airada,
Defendants-Appellants.
 Nos. 92-10569, 92-10604.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 12, 1993.
Order Withdrawn March 22, 1994.
Decided March 22, 1994.
 
 Before: REINHARDT and LEAVY, Circuit Judges, and MERHIGE, Senior District Judge.*
 ORDER
 The Memorandum previously filed on October 5, 1993 in this case is hereby WITHDRAWN.
 MEMORANDUM**
 These matters came before the Court pursuant to appellants' timely appeal from the district court's denial of their joint motion to suppress evidence allegedly obtained in violation of the Fourth Amendment warrant requirement. After oral argument, and upon due consideration, this Court found no error in the district court's determination that the contraband in question was properly seized under the Fourth Amendment. Upon reconsideration, however, the Court has determined that, whereas the search at issue exceeded the clear terms of the warrant, the district court's conclusion that no Fourth Amendment violation occurred cannot stand, and the case must be reversed and remanded.
 
 
 1
 The facts pertinent to the case at bar, which are essentially undisputed, are as follows. On November 26, 1991, at approximately 11:20 a.m., Special Agent Richard Thomas, Jr., serving in an undercover capacity, and accompanied by a confidential informant (C.I.), visited a residence located at 1832 W. Astolat, Tucson, Arizona. The alleged purpose of the visit was to negotiate a purchase of marijuana from defendant-appellant Mario Antonio Machado-Martinez (Machado). Upon being informed by Machado's wife that Machado was not at home, Thomas and the C.I. departed. At 12:23 p.m. on the same day, Thomas and the C.I. met Machado and defendant Rene Roberto Luna-Airada (Luna) at a local restaurant. Machado, Thomas and the C.I. discussed both price and quantity of the proposed drug transaction. Machado then requested that Thomas and the C.I. follow him and Luna to a residence on Calle Lerdo.
 
 
 2
 Upon arrival, Thomas observed Machado retrieve a box from Machado's vehicle and carry it into the kitchen area of the residence. Thomas then entered the kitchen and observed Machado open the box and display representative marijuana. At this time Thomas was informed that "an additional larger quantity of marijuana" would be delivered to the residence at 918 W. Calle Lerdo at approximately 2:00 p.m. that afternoon. After Luna expressed concern about the transaction occurring at the Calle Lerdo address, Machado stated that the transaction would be conducted at his own residence, 1832 W. Astolat.
 
 
 3
 At approximately 2:00 p.m., Thomas talked to Machado on the telephone. Machado indicated that at approximately 6:00 p.m. that same day there would be approximately three hundred pounds of marijuana at the W. Astolat address. At approximately 4:00 p.m. Thomas contacted Tucson police officer Kenneth Pesano, who obtained a telephonic search warrant from Pima County Superior Judge Harry Gin. This warrant was issued at 4:24 p.m. In his affidavit, later memorialized in the search warrant, Pesano described the premises to be searched as "1832 W. Astolat, a red brick, single family dwelling with black wrought iron on the doors and windows and a two ft. red brick and wrought iron wall around the property line." The warrant authorized authorities to search for "narcotics or dangerous drugs, marijuana packaged or loose, narcotics ledgers such as profit or owe sheets, any writings which would identify any and all co-conspirators. Large sums of U.S. currency."
 
 
 4
 At 6:18 p.m. Thomas and the C.I. arrived at 1832 W. Astolat with the ostensible purpose of purchasing marijuana. Machado invited Thomas and the C.I. into the house through which they walked to an "Airstream" trailer located at the rear of the property. Machado unlocked the trailer door and entered, followed by Luna, Thomas and the C.I. In the kitchen area of the trailer, Thomas examined a bag of marijuana, inquired again as to price and stated he would retrieve the purchase money. Thomas and the C.I. then exited the trailer, entered the back door of the brick house and exited the house through the front door.
 
 
 5
 When Machado unlocked the wrought iron gate, Thomas gave an arrest signal for other officers to enter the house and arrest Machado and Luna. After searching the house, the officers entered and searched the trailer behind the house, where they seized 239 pounds of marijuana.
 
 
 6
 Appellants were thereafter indicted for possessing marijuana with intent to distribute (Count One) and conspiracy (Count Two), in violation of 21 U.S.C. sections 841(a)(1) and 846. Appellants filed a joint motion to suppress the marijuana. Their motion was denied by the district court. Thereafter Machado pled guilty to Count One, and Luna pled guilty to Count Two, the other counts against the respective appellants being dismissed, reserving for appeal the denial of the motion to suppress. Appellants now jointly appeal their judgments and sentences.[1]
 
 
 7
 As with our first consideration of this appeal, the Court is not persuaded by appellants' contention that the marijuana was subject to suppression because it was seized pursuant to a search warrant lacking in probable cause insofar as the authorities allegedly conducted an improper search on the basis of an anticipatory warrant. Despite appellants' contention that the search was unlawful because at the time the warrant issued the marijuana was not yet present on the W. Astolat premises, the Court remains of the opinion that, based on the record before it, there was a sufficient basis to conclude that probable cause existed to believe narcotics were being transacted at the W. Astolat address at the time the warrant issued.
 
 
 8
 In assessing the validity of a search warrant, "the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for ... conclud[ing]' that probable cause existed." United States v. Rodriguez, 869 F.2d 479, 484 (9th Cir.1989) (citations omitted). Affording, as we must, great deference to the issuing judge's determination, we conclude that a substantial basis existed for Judge Gin's conclusion that, at the time the warrant issued, there was probable cause to search the W. Astolat premises for contraband. As such, the Court declines to invalidate the search on an alleged lack of probable cause.
 
 
 9
 Appellants next focus their argument on the precise terms of the warrant, asserting that the scope of the warrant was exceeded when the authorities entered and searched the Airstream trailer that contained the roughly 300 pounds of marijuana. As noted above, the warrant specified for search "1832 W. Astolat, a red brick, single family dwelling with black wrought iron on the doors and windows and a two ft. red brick and wrought iron wall around the property line." Noticeably absent from this description is reference to the trailer. Properly read, appellants assert, the warrant only permitted the search of the red brick dwelling, not the trailer. Therefore, according to appellants, the search of the trailer was per se unreasonable, requiring suppression of any evidence seized therefrom. Having reviewed the record and authorities before the Court, we are satisfied that the parameters of the warrant were plain, and that when the authorities included in their search the Airstream trailer they impermissibly exceeded the scope of an otherwise valid warrant.
 
 
 10
 The Court's review is guided by the principle that "[A] warrant must particularly describe the items to be seized and does not leave anything to the discretion of the executing officer." United States v. Crozier, 777 F.2d 1376, 1380 (9th Cir.1985) (citing Marron v. United States, 275 U.S. 192, 196 (1927)). Moreover, "the Fourth Amendment confines an officer executing a search warrant strictly within the bounds set by the warrant." Bivens v. Six Unknown Agents, 403 U.S. 388, 394 n. 7, 91 S.Ct. 1999, 2004 n. 7 (1971). The particularity requirement of the Fourth Amendment "protects the right to be free from unbounded general searches." United States v. Williams, 687 F.2d 290, 292 (9th Cir.1982) (citations omitted). In Williams, this Court rejected the argument that a search exceeded the scope of the warrant where the warrant referred only to "premises" and did not specifically mention buildings and structures upon the land. Id. at 293.[2] Relying on United States v. Meyer, 417 F.2d 1020 (8th Cir.1969), the Williams court concluded that the "Magistrate issuing the warrant intended to use the word premises in the warrant to include and authorize a search of the buildings on the mining claims." Williams, 687 F.2d at 293.
 
 
 11
 Unlike in Williams, the actions of the authorities in the instant appeal were clearly beyond those authorized by the specific language of the search warrant. On the spectrum of specificity, the warrant at issue here, by its very terms, confined the authorities to a search of "1832 W. Astolat, a red brick, single family dwelling with black wrought iron on the doors and windows and a two ft. red brick and wrought iron wall around the property line." Because the Airstream trailer was not a part of this description, the search thereof was without warrant, and therefore impermissible.
 
 
 12
 The Court will also decline to apply to these facts the "good faith" exception to the exclusionary rule established in United States v. Leon, 468 U.S. 897 (1984). "The Leon exception ... is clearly limited to warrants invalidated for lack of probable cause and does not create the broad 'good faith' exception the government suggests.... The Leon rule should therefore not be applied to invalid warrantless searches." United States v. Whiting, 781 F.2d 692, 698 (9th Cir.1986) (citations omitted). Whereas the instant action does not involve a warrant invalidated for lack of probable cause, the Leon good faith exception can have no application.
 
 
 13
 In addition, the Court concludes that the seizure will not be upheld under the plain view exception to the warrant requirement. Having determined that the entry into the trailer, and the seizure of the marijuana therein, was beyond the scope of the warrant, the Court must therefore find that the requirement under the plain view exception that the officers "must also have a lawful right of access to the object itself" simply cannot be satisfied. See Horton v. California, 496 U.S. 128, 136-37 (1990).
 
 
 14
 Accordingly, the Court's prior disposition is VACATED, and this case is REVERSED and REMANDED for such further proceedings as may be appropriate under Fed.R.Crim.Proc. 11(e)(4).
 
 
 
 *
 The Honorable Robert R. Merhige, Jr., Senior United States District Judge for the Eastern District of Virginia, sitting by designation
 
 
 **
 This disposition is not suitable for publication and may not be cited to or by the courts of this Circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Machado received a sentence of 54 months in prison, to be followed by a 5-year term of supervised release. Luna was sentenced to 84 months in prison, to be followed by an 8-year term of supervised release, and a fine of $3,000
 
 
 [2]
 The warrant in question in Williams authorized the search of the
 premises located in the county of Josephine described as follows: Canyon Creek Mine Nos. 1, 2, and 3 in Township 39 South, Range 9, Section [sic] 10 and 11, Willamette Meridian.
 The affidavit on which the warrant was based described with some specificity the three buildings located on the premises as well as the approximate distance from each building to marijuana growing on the premises.