**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Robert R. CARRA, Defendant-Appellant.**

No. 78–1363.

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted May 15, 1979.

Decided Aug. 3, 1979.

Rehearing Denied Sept. 10, 1979.

Tova Indritz, Asst. Federal Public Defender, Albuquerque, N. M., for defendant-appellant.

Richard J. Smith, Asst. U. S. Atty., Albuquerque, N. M. (with R. E. Thompson, U. S. Atty., Albuquerque, N. M., on the brief), for plaintiff-appellee.

Before HOLLOWAY, McKAY and LOGAN, Circuit Judges.

McKAY, Circuit Judge.

Defendant appeals his conviction on three counts of receipt of firearms by a felon[1] and one count of making false statements in the acquisition of a firearm.[2] He complains that the following prejudicial errors justify reversal:

1. The court failed to suppress certain evidence which was the fruit of an illegal warrantless search;

2. A second search was based on a warrant which was improperly executed and returned;

3. Certain inculpatory statements were admitted into evidence which were involuntarily made;

[1]. 18 U.S.C. §§ 922(h)(1), 924(a) (1976).

4. The United States Attorney was illegally vested with discretion to charge defendant with different penalties under different statutes for the same illegal conduct.

## THE SEARCH

■ Defendant leased a fairly remote rural homesite in New Mexico. In the fenced garden area behind the house grew several vegetable crops, including marijuana. On August 29, 1977, a New Mexico narcotics agent approached this fenced area and seized a marijuana leaf. A warrant was then procured to support a more extensive search. It was this subsequent search which uncovered the firearms related to the prosecution in question here. The initial search is relevant because evidence relating to firearms constituted a derivative fruit of that search.

The dispute turns entirely on whether there was sufficient evidence at the suppression hearing to show that neither the officer nor the marijuana leaf were within the curtilage of defendant's home. While the defendant's contrary evidence on this point was considerably more extensive than the government's, the government's evidence was nonetheless sufficient to support the trial court's determination that there had been no illegal invasion of the curtilage of defendant's premises. At the suppression hearing, the agent who seized the marijuana testified as follows:

Q Mr. Kiper, did there come a time when you received information concerning growing of a substantial marijuana crop on land that later developed, was occupied or leased or rented by a man named Robert R. Carra?

A This is correct.

Q How did you receive the information, sir? Let me put it this way: Did there come a time when you entered upon certain fields and actually took into physical custody a certain amount of plant material?

A That's correct.

[2]. 18 U.S.C. §§ 922(a)(6), 924(a) (1976).

Q   And can you describe exactly how you went about getting that plant material, Agent Kiper? If you feel better in drawing a chart, you certainly may be free to do so.

A   After entering the property that was subleased by a doctor in Portales by the name of Buck Wilson,—

Q   Did you have Dr. Wilson's permission to do this, sir?

A   Yes, and I was with him at the time.

Q   Very well, sir. Go ahead.

A   He took me onto the place that he had subleased. I walked to the back of the residence on his subleased property and obtained a leaflet of marijuana, which I recognized to be marijuana. I then departed that area. This leaflet was later turned over to, at that time, Sergeant Ron Walker of the Portales Police Department. He, in turn, obtained a search warrant for that area, while I maintained a surveillance by foot of that general area.

.   .   .   .   .

Q   So the area in which you were when you picked up the marijuana leaf was in the area where this garden was, is that correct?

A   That's correct.

Q   And there was a fence around the garden, isn't there?

A   Yes.

Q   Did you reach your hand through the fence or over the fence?

A   Not—

Q   Marijuana was growing through the fence, is that what you're saying?

A   That's correct.

Q   But you were standing next to the fence, weren't you?

A   I was.

Q   That's the fence around this garden here.

A   That's the picture of this thing, ma'am, that's correct.

Record, vol. 2, at 65–66, 81. This was sufficient evidence to support a trial court conclusion that Wilson, not the defendant, had subleased the premises where the officer stood when he picked the leaf.[3] It also supports a conclusion that the leaf was protruding through the fence, beyond the curtilage, when it was seized. The trial court's refusal to suppress the evidence which flowed from this incident was not error.

*EXECUTION AND RETURN OF WARRANT*

Appellant attacks the form but not the substance of the federal search warrant as not complying with Rule 41(c) of the Federal Rules of Criminal Procedure. The attack is two pronged: (1) that the application was made by a person not authorized by Rule 41[4] and, (2) that the warrant as issued directed return to the issuing judicial officer rather than a federal magistrate.

█   The record reveals that the warrant was issued by a state court judge based on the sworn statement of a state police officer. But the record also shows that the warrant was processed under the supervision and at the instance of a federal officer. This adequately satisfied the requirement that it be "issued upon . . . request of a federal law enforcement officer." *See United States v. Ventresca*, 380 U.S. 102, 108, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965) (hypertechnical approach to search warrants inappropriate).

---

3. It was claimed that the government had stipulated that the defendant was the lessee of the land on which the officer stood; but the record does not bear out defendant's argument on this point. The government had stipulated that if a particular witness were to testify he would *testify* to having rented the land in question to defendant. The stipulation did not concede that defendant leased the land. Record, vol. 2, at 25.

4. In relevant part, Rule 41 provides:

.   .   . A search warrant authorized by this rule may be issued by a federal magistrate or a judge of a state court of record within the district wherein the property sought is located, upon request of a federal law enforcement officer or an attorney for the government.

■ It is true that the issued warrant specified that it should be returned to "me"—the state court judge. The return instruction was printed on the standard warrant form employed by the judge. Had the judge stricken the word "me" and inserted "a federal magistrate," the strictures of Rule 41(c)(1) would have been fully complied with. Nonetheless, in light of the fact that the warrant actually was returned to a federal magistrate, we are unwilling to reverse on this issue.

Other arguments relating to the execution of the warrant are asserted for the first time on appeal and do not raise issues which would rise to the level of fundamental error.

## VOLUNTARINESS OF STATEMENTS

■ To the extent defendant claims that certain inculpatory statements were the fruit of an illegal search, that matter we have already resolved against him by upholding the search. However, defendant also claims that he was compelled to incriminate himself by coercive police conduct. Although defendant signed a statement acknowledging the "voluntary" nature of his statements, he now is understood to assert that the acknowledgment itself arose out of coercive conditions. Voluntary waiver of the right to remain silent is not mechanically to be determined but is to be determined from the totality of the circumstances as a matter of fact. *See North Carolina v. Butler*, —— U.S. ——, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979). While there was considerable force used in connection with effecting defendant's arrest, the government's testimony—which was apparently believed by the trial court—indicates that it was provoked by the defendant and was reasonable under the circumstances. The evidence shows that defendant was properly informed of his rights and that his statements were sufficiently removed in time from the occasion of his forcible arrest and were given under such circumstances that the trial court had a reasonable basis for concluding that they were voluntarily made.

## ILLEGAL VESTING OF DISCRETION

Defendant's final argument is that the statutory scheme which permits the prosecutor to determine whether to prosecute the same conduct under either 18 U.S.C. § 922(h) or 18 U.S.C. App. § 1202(a), the latter of which has a lesser penalty, is unconstitutional. The matter has been expressly determined against defendant by the Supreme Court in *United States v. Batchelder*, —— U.S. ——, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979).

AFFIRMED.