UNITED STATES of America,
Plaintiff–Appellee,

v.

Louis LUK, Defendant–Appellant.

No. 86–5153.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 7, 1987.

Decided Oct. 6, 1988.

William S. Wong, Florance and Wong, San Diego, Cal., for defendant-appellant.

William F. Fahey, Asst. U.S. Atty., Chief, Public Corruption and Government Fraud Section, Los Angeles, Cal., for plaintiff-appellee.

Before POOLE and HALL,* Circuit Judges, and SCHWARZER,** District Judge.

CYNTHIA HOLCOMB HALL, Circuit Judge:

Louis Luk, following the entry of a conditional plea of guilty, appeals the district court's denial of his motion to suppress evidence obtained from a search of his home. Luk argues that the search warrant was issued in violation of Rule 41(a) of the Federal Rules of Criminal Procedure and that the warrant was so overbroad as to preclude a good faith, objectively reasonable belief in its validity. We affirm.

* Judge Hall was drawn to replace Judge Kennedy, who now serves on the Supreme Court. She has read the briefs, reviewed the record, and listened to the tape of oral argument held on January 7, 1987.

** The Honorable William W. Schwarzer, United States District Judge for the Northern District of California, sitting by designation.

1. It is unclear from the record whether it was Rossbacher or his secretary who actually made the telephone call to determine the identity of the duty magistrate.

## I

Louis Luk was one of four persons indicted for conspiracy, illegally exporting high technology computer components to Hong Kong and the People's Republic of China, and making false statements to United States government agents, under 18 U.S.C. § 371, 50 U.S.C. App. § 2410(a), and 18 U.S.C. § 1001, respectively. The indictment followed a lengthy investigation of Luk and his business, Mcall Resources, Inc., by Doris Koplik, an agent of the United States Department of Commerce, Office of Export Enforcement ("OEE"). Throughout the investigation, Koplik was in communication with Assistant United States Attorney Henry Rossbacher.

After Koplik ascertained that Mcall Resources operated out of Luk's home in Irvine, California, she sought a search warrant. With Rossbacher's assistance, she prepared a draft affidavit. The affidavit was typed partially in her office and partially in his. The warrant itself was prepared by Rossbacher in his office. On the day the warrant was issued, October 22, 1984, Rossbacher's office[1] determined which magistrate was on duty and Rossbacher directed Koplik to go to that magistrate and present the application for a warrant. There is no evidence to show that Rossbacher or anyone in his office ever spoke directly to the magistrate.[2] Koplik complied with Rossbacher's instructions and the magistrate issued the warrant. The warrant was executed at Luk's home the following day by a team of agents from the United States Customs Service and the United States Department of Commerce.

2. Subsequent to oral argument counsel for the government moved for a limited remand to enable Assistant United States Attorney Rossbacher to testify that he spoke directly to Magistrate Penne and requested that a search warrant be issued to Agent Koplik. We deny the motion as untimely. The district court suggested that the government produce Rossbacher on at least two occasions. Nevertheless, the government made a tactical decision not to do so.

Luk moved to suppress evidence obtained during the search on the ground that the warrant was unconstitutionally overbroad. He supplemented his original motion with the contention that suppression was required because the search warrant was issued upon the request of an unauthorized person in violation of Rule 41(a) of the Federal Rules of Criminal Procedure.[3] The district court denied Luk's motion. The court found that the warrant was unconstitutionally overbroad,[4] but that suppression was unnecessary because the agents who executed the search did so in good faith reliance upon the warrant's validity.[5] The court also held that the requirements of Rule 41(a) were satisfied:

I cannot find based on the evidence available to me that Mr. Rossbacher, the Assistant U.S. Attorney involved, made any request directly by him personally to Magistrate Penne that the warrant issue, but I will find that the warrant was issued upon the request of an attorney for the Government and that, therefore, Rule 41(a) has been satisfied; that the warrant is, therefore, not invalid for failure to qualify under Rule 41(a).

Following the denial of his motion to suppress, Luk entered a conditional guilty plea under Fed.R.Crim.P. 11(a)(2), preserving his right to challenge the district court's evidentiary rulings. He received a

sentence of five years probation and a $50,-000 fine. Luk timely filed this appeal.

## II

In reviewing the question whether an unauthorized person requested the search warrant, we are called upon to determine whether the district court properly applied existing law to the established facts of this case. Because the question presented "requires us to consider legal concepts in the mix of fact and law and to exercise judgment about the values that animate legal principles," we review *de novo* the district court's determination that Assistant United States Attorney Rossbacher requested the warrant to search Luk's home. *United States v. McConney*, 728 F.2d 1195, 1202 (9th Cir.) (en banc), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984); *see United States v. Johnson*, 641 F.2d 652, 656 (9th Cir.1980).

We also review *de novo* whether the "good faith" exception to the exclusionary rule applies in a particular case. *United States v. Hendricks*, 743 F.2d 653, 656 (9th Cir.1984), *cert. denied*, 470 U.S. 1006, 105 S.Ct. 1362, 84 L.Ed.2d 382 (1985).

## III

In *United States v. Vasser*, 648 F.2d 507 (9th Cir.1980), *cert. denied*, 450 U.S. 928, 101 S.Ct. 1385, 67 L.Ed.2d 360

---

3. Fed.R.Crim.P. 41(a) provides:

A search warrant authorized by this rule may be issued by a federal magistrate or a judge of a state court of record within the district wherein the property or person sought is located, upon request of a federal law enforcement officer or an attorney for the government.

In October 1984, agents of the OEE like Koplik were not, for purposes of Rule 41(a), federal law enforcement officers. Subsequently, OEE agents were so classified. *See United States v. Whiting*, 781 F.2d 692, 694 & n. 6 (9th Cir.1986).

4. The warrant issued provided a detailed description of the premises to be searched. It also provided the following description of the property to be seized:

(1) export records including purchase orders, invoices, proforma invoices, commodity brochures, requests for price quotation, correspondence, export license applications, export

licenses, export regulations, notes, air waybills, shipper's letters of instruction, shipper's export declarations, parcel-post receipts, and telexes relating to Mcall Resources, Inc.; (2) financial records including letters of credit, or other payment records such as cancelled checks, delivery receipts; (3) telephone and communications records and correspondence, including telephone message records and bills, and; (4) any and all other documents, books, and records relating to exports from the United States which are the fruits, instrumentalities and evidence of violation of Title 50, United States Code, Appendix, Section 2410(a), et seq., to include equipment destined for exportation in violation of U.S. law.

5. The district court found the following: "The warrant is overbroad. But the execution of it, the search under it[,] is saved by *Leon*, good faith, reasonable belief in its validity." The government does not appeal the district court's finding that the warrant is overbroad.

(1981), DEA agents obtained a warrant using a tape-recorded affidavit, a procedure not authorized by Rule 41 which requires that warrants may only be issued upon oral telephonic or written affidavits. Although the Court agreed that the agents' "novel approach" did not conform with the procedures sanctioned by Rule 41, the Court held that suppression was not required in all cases in which the issuance of a warrant failed to conform to Rule 41. The Court then elaborated the following two-part test for Rule 41 violations:

> Only a "fundamental" violation of Rule 41 requires automatic suppression, and a violation is "fundamental" only where it, in effect, renders the search unconstitutional under traditional fourth amendment standards. Violations of Rule 41 which do not arise to constitutional error are classified as "non-fundamental." "Non-fundamental" noncompliance with Rule 41 requires suppression only where:
>
>> '(1) there was "prejudice" in the sense that the search might not have occurred or would not have been so abrasive if the Rule had been followed, or
>>
>> (2) there is evidence of intentional and deliberate disregard of a provision in the Rule.'

648 F.2d at 510 (citations omitted).

This fundamental/nonfundamental test existed before *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), and is a judge-made suppression doctrine for Rule 41 violations similar to the good faith exception to the exclusionary rule. The *Vasser* court noted that the "policies behind the exclusionary rule are not absolute and must be evaluated realistically and pragmatically on a case-by-case basis." *Id.* at 510 n. 2; *see, e.g., Leon*, 468 U.S. at 906–07, 104 S.Ct. at 3411–12 (exclusionary rule is judge-made, not constitutional, and application of suppression sanction must be evaluated in each case). Because the exclusionary rule tends to exclude evidence of high reliability, the suppression sanction should only be applied when necessary and not in any automatic manner. *See, e.g., Oregon v. Elstad*, 470 U.S. 298, 354, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985) (Brennan, J. dissenting) ("the [*Leon*] Court held that ... the Fourth Amendment does not *per se* require suppression of evidence derived from an unconstitutional search...."). Further, the link between suppression and the deterrence of unconstitutional conduct should be closely scrutinized, and when deterrence is attenuated or slight suppression should be disfavored. *See Illinois v. Krull*, 480 U.S. 340, 107 S.Ct. 1160, 1166, 94 L.Ed.2d 364 (1987). Noting that the DEA agents acted in good faith, we held in *Vasser* that the Rule 41 violations in question were nonfundamental violations that did not require suppression. *Id.* at 511.

This Court affirmed the *Vasser* test the following year in *United States v. Stefanson*, 648 F.2d 1231 (1981), rejecting a "rather technical" construction of Rule 41 by a Sixth Circuit decision. *Stefanson* held that a magistrate's failure to administer and record an oath for a telephonic search warrant, and other violations of Rule 41, did not require suppression when the errors were nonfundamental and "neither deliberate nor prejudicial." *Id.* at 1235.

■ Luk contends that the fundamental/nonfundamental test should not be applied to violations of Rule 41(a). Alternatively, he argues that this doctrine should be overruled. We reject both contentions. Although neither *Vasser* nor *Stefanson* involved violations of Rule 41(a), the fundamental/nonfundamental test is not confined to violations of any particular subsection of Rule 41. Rather, the test is clearly directed to the substantive nature of the violation rather than under which subsection of the Rule it falls.

In *United States v. Ritter*, 752 F.2d 435 (9th Cir.1985), a state judge issued a telephonic search warrant, violating Rule 41's directive that only a "federal magistrate" may issue a telephonic warrant. Fed.R. Crim.P. 41(c)(2)(A). The Court stated that "the settled rule in the Ninth Circuit is that a purely technical violation of Rule 41 does not require the suppression of evidence otherwise legally obtained." 752 F.2d at 441.

Absent prejudice indicating that "a federal magistrate would have handled the search warrant application differently" or deliberate violation of the Rule by the police officers, the Court concluded that the technical violation of the federal magistrate requirement of Rule 41 was insufficient to call for suppression. *See also United States v. Johnson*, 660 F.2d 749, 753 (9th Cir.1981) (*"Johnson II"*) ("the lack of a federal magistrate issuing the warrant" did not require suppression when defendants/appellants did not contend that the "warrant at issue was 'fundamentally' infirm," but confined themselves to attacking the technical violation of Rule 41 and the federal agents involved in *Johnson II* had discussed and concluded in "good faith" that a federal warrant was not necessary), *cert. denied*, 455 U.S. 912, 102 S.Ct. 1263, 71 L.Ed.2d 452 (1982).

Several Circuits have either adopted the Ninth Circuit's fundamental/nonfundamental test for Rule 41 violations or expressed similar views regarding Rule 41 violations. The Fifth Circuit has expressly adopted the test, rejecting prior decisions that had required automatic suppression for Rule 41 violations. *See United States v. Comstock*, 805 F.2d 1194, 1207 (5th Cir.1986), *cert. denied*, 481 U.S. 1022, 107 S.Ct. 1908, 95 L.Ed.2d 513 (1987) (overruling *United States v. Hanson*, 469 F.2d 1375 (5th Cir. 1972) and *Navarro v. United States*, 400 F.2d 315 (5th Cir.1968)). In *Comstock*, federal agents and state agents conducted a search pursuant to a warrant issued by a state justice of the peace in violation of Rule 41(a)'s requirement that a "federal magistrate or a judge of a state court of record" issue a federal search warrant. Fed.R.Crim.P. 41(a). Applying the fundamental/nonfundamental test, the Fifth Circuit concluded that "[o]ur evaluation of the costs and benefits of suppressing this highly reliable physical evidence leads us to the conclusion that suppression is not warranted." 805 F.2d at 1210.

The *Comstock* court found that the application of the fundamental/nonfundamental test followed from *Leon's* directive to adopt a "balancing approach" and to evaluate the "costs and benefits" of suppression

in determining whether the exclusionary rule's sanction was required in a particular case. *Id.* at 1207. Moreover, the court noted that "good faith" in the fundamental/nonfundamental test did not require, as *Leon* did in the context of Fourth Amendment violations, "objective reasonableness"; the court instead found a "less stringent standard" appropriate when deterrence of "unconstitutional conduct" was not involved. *Id. See also United States v. Carra*, 604 F.2d 1271 (10th Cir.), *cert. denied*, 444 U.S. 994, 100 S.Ct. 529, 62 L.Ed.2d 425 (1979) (no suppression when unauthorized person applies for warrant but warrant was "processed under the supervision and at the instance of a federal officer," thus satisfying the Rule 41 federal officer requestor requirement; "hypertechnical approach" to warrants rejected); *United States v. Loyd*, 721 F.2d 331, 333 (11th Cir.1983) (expressly adopting Ninth Circuit test); *United States v. Burke*, 517 F.2d 377, 381–85 (2d Cir.1975) (warrant improperly issued to, and executed by, a state officer not authorized under Rule 41; held not prejudicial or in deliberate disregard of Rule).

These cases indicate that the issuance of warrants that are "unauthorized" is subject to the test. No automatic exclusionary rule should be created or applied. Furthermore, warrants issued by unauthorized persons are arguably worse violations of the Rule than the instant violation because they violate the Rule's purpose of requiring an appropriate federal or state judge or magistrate to review the reasonableness and probable cause basis of a search warrant. In contrast, an application by an unauthorized person may be considered an error on the part of the issuing magistrate —the failure to determine whether the individual applicant before him is authorized to request a warrant—rather than a violation that directly voids the authority and validity of the warrant *ab initio*. *See, e.g., United States v. Alvarez*, 810 F.2d 879, 883 (9th Cir.1987) (primary function of warrants is to "interpose a neutral and detached magistrate between law enforcement officials and targets of searches and

seizures before a search or seizure has occurred"); *cf. Burke,* 517 F.2d at 381–82 (warrant improperly issued to, and executed by, unauthorized state rather than federal official).

## IV

The record does not show either that the actual request for the warrant came from Assistant United States Attorney Rossbacher or that Rossbacher asked the magistrate to issue the warrant to Agent Koplik. Consequently, we find a technical violation of Rule 41(a) in this case.

This violation is not a fundamental one. As defined in *Vasser,* fundamental violations are in effect constitutional violations of the Fourth Amendment. 648 F.2d at 510. The violation here, however, is clearly not a constitutional violation—an unauthorized person who, as the district court held, clearly believed in good faith that the application procedure for the warrant was proper, prepared the affidavit, and submitted the warrant application under the supervision and upon the instruction of Assistant United States Attorney Rossbacher. This violation does not appear on its face to be more fundamental than the issuance of a warrant by an unauthorized judge, which has been held nonfundamental. *See, e.g., Ritter,* 752 F.2d 435; *Johnson II,* 660 F.2d 749; *Comstock,* 805 F.2d 1194. *See also United States v. Radlick,* 581 F.2d 225 (9th Cir.1978) (warrant issued by state municipal judge not under federal authority is basis for suppression only when prejudice results or deliberate disregard of Rule exists). *But see United States v. Burke,* 517 F.2d 377, 386 (2d Cir.1975) (citing *Navarro,* the Fifth Circuit case overruled in *Comstock,* and stating that warrants issued by unauthorized judges "made what was done in effect an unconstitutional warrantless search").

Nor is this violation a nonfundamental one that requires suppression. Under the fundamental/nonfundamental test, a suppression-required nonfundamental violation is one which either results in prejudice "in the sense that the search might not have occurred or would not have been so abra-sive if the Rule had been followed," or was the result of "intentional and deliberate disregard of the Rule." *Stefanson,* 648 F.2d at 1235. In other words, suppression is required for nonfundamental violations in "bad faith" or resulting in prejudice.

These suppression-required "nonfundamental" violations are logically coextensive with "fundamental" violations of Rule 41. There is very little case law on the substantive content of the fundamental/nonfundamental test other than the *Vasser* and *Stefanson* articulations of the test. In *Burke,* the Second Circuit noted that "the proper test to be applied is whether a particular Rule 41 standard is one designed to assure reasonableness on the part of federal officers, or whether the provision merely blueprints the procedure for issuance of federal warrants." 517 F.2d at 384 (Friendly, J.) (quoting *United States v. Sellers,* 483 F.2d 37 (5th Cir.1973), *cert. denied,* 417 U.S. 908, 94 S.Ct. 2604, 41 L.Ed.2d 212 (1974)). Our decision in *Alvarez,* 810 F.2d 879, is instructive. *Alvarez* involved a warrantless arrest in a non-public place—a *presumptively* unreasonable violation of the Fourth Amendment. *Id.* at 881. The government offered no evidence for its failure to seek a telephonic warrant, as authorized under Rule 41(c)(2), and attempted unsuccessfully to invoke the exigent circumstances exception to the warrant requirement. This court applied the suppression sanction, concluding in part that "there has not been the slightest effort to comply with a clear, concise rule such as Rule 41(c)(2).... The actions of the agents and the Assistant United States Attorney in ignoring the telephone warrant procedure totally frustrates the accommodation [of law enforcement with constitutional rights] approved by Congress." *Id.* at 884. *Alvarez* is a paradigmatic example of a "fundamental" violation of Rule 41. Moreover, the *Alvarez* decision's language regarding deliberate disregard of the Rule supports the substantive connection between suppression-required nonfundamental and fundamental violations.

Applying this analysis to the instant case, the nonfundamental Rule 41 violation

in question is not equivalent to a fundamental violation because it neither prejudiced Luk nor resulted from deliberate disregard or bad faith on the part of Agent Koplik or Assistant United States Attorney Rossbacher. The Rule 41 violation here did not prejudice Luk; the violation did not itself result in an "an unconstitutional warrantless search." *United States v. Gatewood*, 786 F.2d 821, 824 (8th Cir.1986); *see Alvarez*, 810 F.2d 879. There is no reason to believe that the federal magistrate who reviewed the affidavit and warrant application presented by Agent Koplik would have proceeded differently or not authorized the search warrant if Rossbacher had himself called directly to "request" the warrant or requested it in person. *See United States v. Johnson*, 641 F.2d 652 (9th Cir.1980) (*"Johnson I"*) (initial phone call to magistrate by Assistant United States Attorney to request warrant sufficient to satisfy Rule 41(a) request requirement, though unauthorized state officer presented the warrant application and oral affidavit to magistrate). If Rossbacher had directly telephoned the magistrate, this would have brought the instant case within *Johnson I* to satisfy the Rule 41 request requirement. And, without doubt, an in-person appearance by Rossbacher, even limited to a "Mr. Magistrate, here is Agent Koplik who investigated this case and will present her affidavit," would have satisfied Rule 41.

Moreover, a direct request by Rossbacher instead of by Agent Koplik would not have diminished the "abrasiveness" of the search. *Johnson II*, 660 F.2d at 753. The warrant's overbreadth defect, a failure to specify dates and particular transactions for the business records sought in the search, was not the result of Rossbacher's failure to request the warrant in person or otherwise. The district court found that the warrant itself was prepared by Rossbacher and Agent Koplik's affidavit was prepared and supervised in part by Rossbacher. Thus, the failure to correct the particularity problem, realistically viewed, was an error on the part of the federal magistrate who reviewed the application and issued the warrant.

Nor was there any indication of "bad faith" or "deliberate disregard" of Rule 41 by Koplik or Rossbacher. The district court specifically found that Koplik acted in good faith in relying on Rossbacher's instruction to present the warrant application and Luk does not challenge this finding. It is important to note that, unlike many Rule 41 violation cases, *see, e.g., Stefanson*, 648 F.2d 1231, *Ritter*, 752 F.2d 435, this warrant application was not an urgent or middle-of-the-night telephonic search warrant application: Koplik had worked on the case for 10 months before the actual application, including two and one-half months of drafting the affidavit, and Koplik had contacted Rossbacher one week after her initial assignment to the case and had twenty to twenty-five meetings with him over the next ten months regarding various aspects of the Luk investigation, including the editing and drafting of the warrant affidavit. This was a careful investigation by Agent Koplik and Rossbacher. When Rossbacher directed Koplik to apply for the warrant, Koplik and Rossbacher must have thought their application satisfied the Rule 41 request requirement. Unlike the behavior of the agents and the Assistant United States Attorney in *Alvarez*, the behavior of Koplik and Rossbacher here suggests absolutely no attempt to avoid compliance with any of Rule 41's requirements, nor to avoid the most fundamental policy of the Rule—the strong preference for a search warrant itself.

### V

■ Even if the instant Rule 41 violation were initially determined to be either a fundamental or a suppression-required non-fundamental violation, then the suppression sanction is still not required under *Leon*. Luk contends that the *Leon* exception is inapplicable in the case of a warrant obtained wholly without authority, and cites *United States v. Whiting*, 781 F.2d 692 (9th Cir.1986). *Whiting* is inapposite, however. That case was treated by the Court and by the parties on appeal as a "warrantless search." *Id.* at 695. *Whiting* did not involve a Rule 41 violation, but

rather the OEE's authority under export regulations to conduct a warrantless search. 781 F.2d at 698. The *Whiting* decision simply decided very different issues: (1) that the OEE had no authority to conduct warrantless border searches and (2) that no reasonable reliance under *Leon* could exist on the OEE's export regulations as authorization to conduct any warrantless search. *Id.* The precise question here, however, is whether the warrant issued was invalid because it was not issued upon the request of an authorized person. This is not a warrantless search case.

The *Whiting* opinion also states that *Leon* only applies "to warrants invalidated for lack of probable cause and does not create the broad 'good faith' exception the government suggests." *Id.* at 698. This statement is misleading unless read in context which makes it quite clear that what the court had in mind was, as it said, that "[t]he *Leon* rule should ... not be applied to invalid warrantless searches." This reading is consistent with the companion case to *Leon, Massachusetts v. Sheppard,* 468 U.S. 981, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984), which applied the good faith exception to a warrant involving a "clerical error" by the issuing judge that resulted in a violation of the particularity requirement of the Fourth Amendment. 468 U.S. at 986–98, 104 S.Ct. at 3426–27; *see United States v. Michaelian,* 803 F.2d 1042, 1046 (9th Cir.1986). In *Michaelian,* the Ninth Circuit rejected an argument that *Leon* was "inapplicable to situations where the officer obtaining the warrant, not the magistrate, causes the defect in the warrant." *Id.* at 1047. This court interpreted the *Leon* inquiry as one which "focuse[s] exclusively upon the issue of whether there was an objective reasonable basis for the mistaken belief of the executing officers that the warrant was valid." *Id.* Following *Leon's* analysis, the *Michaelian* court noted that "[i]n the absence of abandonment of the detached and neutral magisterial role, suppression is proper only where the officers were dishonest or reckless in preparing their affidavit, or could not have harbored an objectively reasonable belief in

the existence of probable cause due to a facial deficiency in the warrant." *Id.*

The *Leon* decision itself rejects an overly technical view of the validity of search warrants and the application of the exclusionary rule. The *Leon* decision warned that:

"If exclusion of evidence obtained pursuant to a subsequently invalidated warrant is to have any deterrent effect, therefore, it must alter the behavior of individual law enforcement officer or the policies of their departments.... [We] conclude that suppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule."

468 U.S. at 918, 104 S.Ct. at 3418.

In *Illinois v. Krull,* 480 U.S. 340, 107 S.Ct. 1160, 94 L.Ed.2d 364. (1987), the Supreme Court extended the good faith exception to the exclusionary rule to objectively reasonable reliance by an officer on a *statute* authorizing warrantless administrative searches. *Krull* stated that the applicability of a good faith exception must be determined by a balancing test of the "likelihood of [future unlawful police conduct] deterrence against the costs of withholding reliable information from the truth-seeking process." *Id.* 107 S.Ct. at 1166. The Court noted three factors that determined whether the exclusionary rule should be applied: (1) whether suppression would affect the group conduct that the exclusionary rule was designed to punish, i.e., police misconduct; (2) the source of the error in the particular case and whether any evidence suggested that the source, e.g., issuing magistrates, was "inclined to ignore or subvert the Fourth Amendment," *id.* at 1166 (citing *Leon,* 468 U.S. at 916, 104 S.Ct. at 3417); and (3) the basis for believing the exclusion of evidence will have a significant deterrent effect upon the source of the error. In *Krull,* the Court applied this analysis to the Illinois legislature as the source of the subsequently invalidated statute, concluding that legislatures in general were neither inclined to enact invalid laws

nor significantly deterrable since their law enforcement role was far removed from the individual case. *Id.* 107 S.Ct. at 1167–68.

*Krull* indicates that a realistic and pragmatic approach to the exclusionary rule is required. Here, the executing agents and Agent Koplik clearly attempted in substance and in procedure to obtain and execute a warrant they believed was valid. The Rule 41 violation here, even if it were a fundamental or a suppression-required non-fundamental violation, falls within the good faith exception. It neither approaches the seriousness of the violation in *Alvarez* nor is it any more serious than the unauthorized warrants in *Ritter, Johnson II,* or *Comstock* in which suppression was denied under the fundamental/nonfundamental test.[6]

The dissent rejects the district court's finding of good faith by stating that "Koplik must be presumed to have known that she lacked authority to personally request a search warrant." Dissent slip op. at 5 n. 3. This misses the central issue. Even if Koplik should have known that she had no authority to request the search warrant, it is not clear that she should be presumed to have known that Rossbacher's directions and his actions did not satisfy the Rule 41 request requirement. *Cf.* Fed.R.Crim.P. 41 advisory committee's notes (for oral or telephonic warrants, expressly allowing a witness other than the requestor to supply the facts necessary to satisfy the probable cause requirement). It is Koplik's reliance on Rossbacher's instructions, and the federal magistrate's failure to object to her

presentment of the warrant application, that should be the object of the "good faith" inquiry. *Cf. Sheppard,* 468 U.S. at 989–90, 104 S.Ct. at 3428 ("we refuse to rule that an officer is required to disbelieve a judge who has just advised him, by word and by action, that the warrant he possesses authorizes him to conduct the search he has requested.... '[T]he exclusionary rule was adopted to deter unlawful searches by police, not to punish the errors of magistrates and judges.'" (citation omitted)). The district court undertook precisely this inquiry and held that Agent Koplik proceeded in good faith. This finding is unchallenged on appeal.[7]

## VI

■ Because the warrant issued was constitutionally defective for lack of particularity, we next address the issue of whether the search executed by the Customs and OEE agents was objectively reasonable and in good faith under *Leon* and, therefore, not a basis for suppression.

■ We initially note the well-settled principle that a warrant's overbreadth can be cured by an accompanying affidavit that more particularly describes the items to be seized. *See, e.g., United States v. Hillyard,* 677 F.2d 1336, 1340 (9th Cir.1982). Under the law of our circuit, however, Agent Koplik's affidavit cannot be construed to cure the warrant's particularity defect because the affidavit was not expressly incorporated into the warrant by reference. *Id.*[8] Nevertheless, this does not preclude the use of the executing officers' reliance upon the affidavit as evidence

---

**6.** It would be rather perverse to refuse to apply *Leon* to the comparatively technical Rule 41 violation while holding, *infra,* that the search executed pursuant to the unconstitutionally overbroad warrant falls within the good faith exception.

**7.** Though remand to allow the defendant to attempt to show prejudice or deliberate disregard may be appropriate, the facts on the record are sufficient to decide the applicability of either the fundamental/nonfundamental test or the *Leon* good faith exception. The district court did an excellent job in ferreting out all the details of the search warrant's issuance and execution.

**8.** To construe the search warrant with reference to the affidavit for purposes of satisfying the particularity requirement, *Hillyard* requires that the affidavit accompany the warrant and that it be expressly incorporated into the warrant by reference. 677 F.2d at 1340. Some other circuits have applied these criteria less rigidly. *See Rickert v. Sweeney,* 813 F.2d 907, 909 (8th Cir.1987); *United States v. Wuagneux,* 683 F.2d 1343, 1351 n. 6 (11th Cir.1982), *cert. denied,* 464 U.S. 814, 104 S.Ct. 69, 78 L.Ed.2d 83 (1983); *United States v. Haydel,* 649 F.2d 1152, 1157 (5th Cir. Unit A July 1981), *cert. denied,* 455 U.S. 1022, 102 S.Ct. 1721, 72 L.Ed.2d 140 (1982).

of their reasonable reliance on the validity of the warrant or their good faith.

The Supreme Court has emphasized that the exclusionary rule should only be applied on a case-by-case basis, balancing the costs and benefits of suppression. *See Illinois v. Krull*, 480 U.S. 340, 107 S.Ct. 1160, 1166, 94 L.Ed.2d 364 (1987); *Leon*, 468 U.S. at 918, 104 S.Ct. at 3418. It would be contrary to this approach to hold that the failure to type the phrase "see attached affidavit" on the face of the warrant precludes the use of the executing officers' reliance upon the affidavit as evidence of their reasonable reliance on the validity of the warrant or their good faith. Thus, although the affidavit cannot be used to cure the warrant's overbreadth, the possession of the affidavit when the officers conduct their search, for example, is evidence of good faith under *Leon*. *See United States v. Crozier*, 777 F.2d 1376, 1382 (9th Cir.1985).

Under *Leon*, the good faith exception to the exclusionary rule is inapplicable when the warrant is "so facially overbroad as to preclude reasonable reliance by the executing officers," *United States v. Michaelian*, 803 F.2d 1042, 1046 (9th Cir.1986), or when the officers do not act in good faith. *United States v. Spilotro*, 800 F.2d 959, 968 (9th Cir.1986). The inquiry is case-by-case. "Suppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule." *Leon*, 468 U.S. at 918, 104 S.Ct. at 3418.

The twenty-two page affidavit prepared by Agent Koplik with Assistant United States Attorney Rossbacher's assistance related the results of an extensive investigation. It provided the particularity that the warrant lacked: dates and names of manufacturers that identified the export transactions for which the government had probable cause to believe a violation of law had occurred.[9] Therefore, had the agents read the warrant in conjunction with the affidavit, the search would have been limited to items relating to those transactions with respect to which there existed probable cause to seize.

In this case, the affidavit did act as this sort of limit on the search. Agent Bammer, who was specifically authorized to execute the warrant, read Agent Koplik's affidavit prior to the search; at the briefing immediately prior to the warrant's execution, Koplik apprised Bammer and the two other agents who assisted in the search of the particular items to seize; Koplik was present at the premises and advised the agents concerning what items were properly within the scope of the search; and the agents specifically relied on the affidavit in determining at the scene what items were properly within the scope of the search.[10]

The absence of any contention that the officers seized any items other than those relating to transactions described in the affidavit indicates that the agents relied on the more particular affidavit. Moreover, it evidences the officers' good faith. Unlike

---

9. Unlike our decision in *United States v. Washington*, 797 F.2d 1461, 1473 n. 16 (9th Cir.1986), there is no evidence here that the affiant, Agent Koplik, knew the warrant was overbroad. Nor is there any evidence that would support a claim that Koplik was "dishonest or reckless in preparing [her] affidavit." *Leon*, 468 U.S. at 926, 104 S.Ct. at 3422. On the contrary, the affidavit was diligently prepared by Koplik with Rossbacher's assistance.

10. It is unclear from the record whether the affidavit was actually in hand during the search. The affidavit was attached to the warrant Agent Bammer was given at the briefing immediately prior to the search. We cannot discern, however, whether he carried the affidavit with him

onto the premises along with the warrant or whether Agent Koplik possessed a copy of her own affidavit at the scene.

Although we noted in *Crozier* that an agent's possession of the affidavit when he conducts the search pursuant to an overbroad warrant is *evidence* of good faith, 777 F.2d at 1382, we do not read *Crozier* to hold the converse: that the absence of the affidavit at the scene *precludes* a finding of good faith. Nor do we read *Crozier* to forbid the use of the officers' reliance upon the affidavit in this case to support a finding of reasonable reliance on the validity of the warrant. *See Krull*, 107 S.Ct. at 1166; *Leon*, 468 U.S. at 918, 104 S.Ct. at 3418 (exclusionary rule should only be applied on a case-by-case basis).

cases in which the executing officers seized evidence to the full extent of an overbroad warrant, *see United States v. Fuccillo*, 808 F.2d 173, 177–78 (1st Cir.), *cert. denied*, 107 S.Ct. 2481 (1987), the agents here acted in good faith by limiting their search to items relating to those transactions described in the affidavit with respect to which there existed probable cause to seize. They seized a limited number of documents compared with the quantity of documents found at the premises that would have fallen within the terms of the overbroad warrant.[11] This was not a "general, exploratory rummaging in a person's belongings." *Coolidge v. New Hampshire*, 403 U.S. 443, 467, 91 S.Ct. 2022, 2038, 29 L.Ed. 2d 564 (1971).

In light of the officers' reliance on the accompanying affidavit, we hold that the warrant, construed in conjunction with the affidavit, was not "so facially overbroad as to preclude reasonable reliance by the executing officers." *Michaelian*, 803 F.2d at 1046; *see Massachusetts v. Sheppard*, 468 U.S. 981, 990 n. 7, 104 S.Ct. 3424, 3429 n. 7, 82 L.Ed.2d 737 (1984) ("This is not an instance in which 'it is plainly evident that a magistrate or judge had no business issuing a warrant.'" (citation omitted)); *United States v. Accardo*, 749 F.2d 1477, 1481 (11th Cir.) (warrant authorizing search of "all corporate records" not "so facially deficient" as to preclude good faith), *cert. denied*, 474 U.S. 949, 106 S.Ct. 314, 88 L.Ed.2d 295 (1985).[12] The reasonableness of the executing officers' reliance is buttressed by the expertise of Assistant United States Attorney Rossbacher, who assisted Agent Koplik in drafting the affidavit and who actually prepared the warrant. *See Michaelian*, 803 F.2d at 1047; *United*

*States v. Fama*, 758 F.2d 834, 837 (2d Cir.1985). The officers' reliance on Agent Koplik's affidavit also supports the district court's finding that the officers acted in good faith.

## VII

The decision of the district court is AFFIRMED.

POOLE, Circuit Judge, dissenting:

I do not accept the majority's rationale and therefore dissent from the court's holding.

There was a time in the history of this country when judges—and especially judges of the United States courts—understood and were anxious to honor the epochal history out of which developed jealous strictures on the issuance of search warrants. There was a time, too, when judges did not feel the urge to weaken those dearly bought protections to which every citizen is entitled as against abuse by the government in both the issuance and execution of search warrants. Today's decision is one more effort by which our personal freedoms are undermined and we are less secure. The majority opinion pushes off in that direction by the employment of such easy verbalisms as "fundamental/non-fundamental," slip op. at 11, and pseudo aphoristic quotes lifted from a decision out of another circuit and involved with quite asymmetric fact mixes.

As to the historical facts of this case (distinguished from the inferences which the majority opinion has drawn from them), we are in substantial agreement. But in my view the treatment of that factual con-

---

**11.** Agents Koplik and Bammer testified that the amount of evidence seized ranged from one-third to one-half of the Mcall Resources documents present at Luk's residence.

**12.** Our decision in *Spilotro* is not to the contrary. We held in *Spilotro* that the good faith exception did not apply despite the executing agents' alleged reliance on the affidavit drafted in support of the warrant. 800 F.2d at 968. The affidavit in that case was:

a nonindexed, unorganized, day to day narration, 157 pages in length. It contains neither

a specific list nor a detailed description of the items to be seized. The affidavit does not provide the information needed to limit the general terms of the warrant.... Given the nature of the affidavit and the fact that the agents were given but a small portion of it, the government's argument that the agents were somehow constructively guided by the affidavit in executing the warrants is unpersuasive.

*Id.* at 967.

text should have resulted in a judgment reversing the district court and ordering suppressed the fruit of what is clearly an illegally issued warrant; illegally issued, and not at all saved by the so-called "good faith exception" spawned by *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). The warrant was requested by Agent Doris Koplik who was neither a law enforcement agent nor a person authorized by the Attorney General to apply for search warrants, as required by Rule 41(a) and (h) of the Federal Rules of Civil Procedure. The majority has decided that it makes very little difference who requests the warrant and to that extent, has effectively nullified the clear directives of that provision.

Rule 41(a) mandates that a request for a search warrant be made only by a federal law enforcement officer or by an attorney for the government. When this warrant was issued in October 1984, Koplik, an agent of the Office of Export Enforcement, was not, for purposes of the Rule, a federal law enforcement officer. *United States v. Whiting*, 781 F.2d 692, 694 & n. 6, 698 (9th Cir.1986). At the same time, Assistant United States Attorney Rossbacher was an attorney for the government and was authorized to request a federal search warrant. *See Johnson*, 641 F.2d at 656. The question before us is whether the request for the warrant was made by Agent Koplik, who was not authorized to request it, or by Assistant United States Attorney Rossbacher, who was.

The outer boundary for compliance with Rule 41(a) is marked by our holding in *United States v. Johnson*, 641 F.2d 652 (9th Cir.1980). There, a police officer not authorized under Rule 41(a) telephoned an Assistant United States Attorney and explained his immediate need for a search warrant. The attorney personally contacted a magistrate to request a telephone search warrant. The attorney supplied the magistrate with the name of the police officer and the phone number where the officer could be reached. Pursuant to this request, the magistrate then called the officer who recited the facts which established probable cause. The magistrate administered the oath to the officer and directed him to fill out the duplicate papers bearing the magistrate's name. A divided panel of this court held that the request for the warrant was literally made by the government attorney, not the officer, because the attorney had actually called the magistrate and actually requested that the warrant issue. *Id.* at 656. *See also United States v. Massey*, 687 F.2d 1348, 1356 (10th Cir. 1982) (warrant issued upon affidavit of state narcotics agent satisfied Rule 41(a) where Assistant United States Attorney telephoned judge in advance and accompanied state agent when supporting affidavit was presented to judge).

In contrast, by no possible stretch of imagination can the record in the present case be said to show that any request for the warrant came from the Assistant United States Attorney. It merely shows that he was involved in the preparation of the affidavit and warrant, that he found out what magistrate was available and then (presumably because he had other more important things to do) instructed Agent Koplik to present the application. The record contains no evidence that Rossbacher asked the magistrate to issue a warrant. There is not even any evidence that he ever spoke to the magistrate. Koplik was sent alone to the magistrate to obtain a warrant; she presented the affidavit and the warrant to the magistrate; and she, rather than Rossbacher, had signed both documents. On these facts it ought to be a matter of law, that the request came not from Rossbacher, but from Koplik and that Rule 41(a) was violated.[1]

1. Subsequent to oral argument counsel for the government moved for a limited remand to enable Mr. Rossbacher to testify that he spoke directly to Magistrate Penne and requested that a search warrant be issued to Agent Koplik. We deny this motion as untimely. The government had every opportunity to present this testimony to the district court. In fact, the district court suggested that the government do so on at least two occasions:

THE COURT: If you want to bring yourself in the four corners of that *Johnson* case ... you better find out whether this witness knows whether Rossbacher called Magistrate Penne

While a Rule 41 violation does not automatically require suppression, *United States v. Vasser*, 648 F.2d 507, 510 (9th Cir.1980), *cert. denied*, 450 U.S. 928, 101 S.Ct. 1385, 67 L.Ed.2d 360 (1981), the evidence seized at Luk's residence ought to be suppressed in this case. The government does not contest the district court's conclusion that the warrant was unduly broad in its description of the items to be seized.[2] The district court held that despite the warrant's overbreadth the property seized was admissible as evidence under the so-called "good faith exception" to the exclusionary rule established by the Supreme Court in *Leon*. The *Leon* exception, however, is inapplicable in the case of a warrant obtained wholly without authority. *See United States v. Whiting*, 781 F.2d 692, 698 (9th Cir.1986) ("*Leon* does not apply to search warrants issued to people who are not permitted to obtain such warrants"). Thus, the warrant could not be saved on the basis of good faith reliance.[3]

In disregarding the provisions of Rule 41, the majority seems simply to have ignored the important principle which is implicit in that rule that the government is not entitled to have a search warrant issued unless the request is made by one who is strictly authorized by law to do so. Rule 41(a) limits the category of those who may make such a request to (1) an attorney for the government, or (2) a "federal law enforcement officer."[4] It is conceded that Koplik was not in the category of a "law enforcement officer" and was not so designated.

There is a very strong policy basis for limitations upon the authority to request a search warrant. It is unnecessary herein to revisit the foundations of our rules on search warrants or to attempt to set forth how deep run the feelings and passions which brought them forth. Giving the authority to intrude upon a citizen's home is a solemn and serious act. Where the power of the government is to be marshaled to command entry into a private home—to command, and, if not obeyed, to break, and enter the close—is a heavy exercise of public process; it ought to require, as the writers of the Fourth Amendment intended, strict compliance with the Constitution,

---

and asked him to consider the application for a search warrant to be presented by Agent Koplik. We don't know that at this point. If this witness just doesn't know the facts on that one way or another, then *maybe we better get Rossbacher down here.* (Emphasis supplied.)

Furthermore, the government's attorney told the court that Koplik was not present when the phone call was made, the Court said: "All right. In that case I suppose it's hearsay and *maybe you would need Mr. Rossbacher.*" (Emphasis supplied.)

Despite these strong suggestions by the trial court, the government made a tactical decision not to produce Rossbacher. We are not now disposed, at this tardy hour, to reopen this issue for the consideration of a newly tendered government position. The government not only did not contend at oral argument that the Assistant United States Attorney had in fact made the request, but has not even furnished this court with any declaration or affidavit by Rossbacher that he would testify to having done so.

2. The district court found the following: "The warrant is overbroad. But the execution of it, the search under it[,] is saved by *Leon*, good faith, reasonable belief in its validity." In its brief the government acknowledges that it "is not appealing the district court's finding that the warrant is overbroad."

Although we do not therefore have the overbreadth issue before us, we note that this particular warrant is extremely broad and that one reason for Rule 41(a) is to guard against the issuance of overly broad warrants.

3. Even if *Leon* were to apply, the members of Koplik's search team could not be said to have acted in good faith because Koplik must be presumed to have known that she lacked authority to personally request a search warrant. *Whiting*, 781 F.2d at 699 n. 16. The fact that the warrant was technically executed by Agent Bammer does not diminish the point, since the record clearly shows that Agent Bammer was acting under the direction of Koplik.

4. This is defined in Fed.R.Crim.P. 41(h) in the following language:

The phrase "federal law enforcement officer" is used in this rule to mean any government agent, other than an attorney for the government as defined in Rule 54(c), who is engaged in the enforcement of the criminal laws and is within any category of officers authorized by the Attorney General to request the issuance of a search warrant.

Rule 54(c) defines "attorney for the government."

with governing statutes and with rules of implementation. This goes for issuance no less than execution. Our rules aim to assure us not only that there is a public need to invade, but that execution of that duty is entrusted only to those special government officers who are seasoned, informed about the business of entry, search and seizure, and who have been explicitly designated by the Attorney General of the United States. The administration of public justice is not to be handed lightly to whomsoever is handy.

Today's majority decision breaks one more strand of protection, opens wider the door to insecurity, and invites still other takings of our immunities. I would reverse the judgment of the district court.