961 F.2d 217
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Bernitha Laconia ASEMOTA, Defendant-Appellant.
 No. 91-30077.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 4, 1992.
Decided April 24, 1992.
 
 1
 Before EUGENE A. WRIGHT and ALARCON, Circuit Judges, FONG, District Judge*.
 
 
 2
 MEMORANDUM**
 
 
 3
 Bernitha Asemota appeals her convictions on one count of importing heroin (21 U.S.C. § 952), one count of conspiring to import heroin (21 U.S.C. § 963), one count of possessing heroin with intent to distribute (21 U.S.C. § 841(a)(1)) and one count of aiding and abetting smuggling goods into the country (18 U.S.C. §§ 545 and 2). Asemota seeks reversal on four discrete grounds. (1) The district court erred in denying her motion to suppress evidence obtained as a result of her pat-down search during a customs inspection because the pat-down search was unsupported by minimal suspicion. (2) The warrant to search her residence was issued without probable cause and was constitutionally overbroad; (3) the court abused its discretion in admitting testimony that the Jefferson County Sheriff's Department would have aided Asemota if drug traffickers threatened her children; and (4) the court abused its discretion in admitting testimony that drug couriers are usually paid for their services.
 
 I.
 
 4
 Asemota argues that the district court erred in denying her motion to suppress heroin seized during a pat-down search conducted at the Seattle-Tacoma International Airport. She contends that the customs agents were not aware of facts raising a minimal suspicion of criminal wrongdoing to justify the pat-down search.
 
 
 5
 The validity of a border pat-down search presents a mixed question of law and fact. United States v. Handy, 788 F.2d 1419, 1420 (9th Cir.1986). We review the district court's factual findings for clear error. We review the application of the law to the facts de novo. Id.
 
 
 6
 Unlike most searches, a border search may be initiated without a warrant and absent the existence of articulable suspicion or probable cause. United States v. Ramsey, 431 U.S. 606, 616 (1977); United States v. Des Jardins, 747 F.2d 499, 502 (9th Cir.1984). However, the officer conducting the search must proceed in a reasonable manner. Id. at 504. While the type and level of suspicion demanded by the reasonableness requirement cannot be comprehensively defined, the need for a particular search must be balanced against the invasion the search entails. Id. We have determined that the suspicion necessary to justify a customs search is dependent on the intrusiveness of the search. Id. Accordingly, although no suspicion is required to search baggage, a pat-down search conducted during a customs inspection requires "a minimal showing of suspicion." Id.
 
 
 7
 Prior to conducting the pat-down search, the customs agents were aware of the following facts: (1) the Asemotas had traveled to and from Singapore, a source country for narcotics; (2) the Asemotas tried to leave the baggage area without undergoing the secondary inspection after being explicitly instructed to proceed there for further examination; (3) the Asemotas' luggage contained 8-10 girdles and stomach medication; and (4) Asemota wore an oversized, bulky dress. During the suppression hearing, Customs Agent Sharon Barnes testified that girdles are frequently used to smuggle narcotics. She also stated that narcotics smugglers sometimes use stomach medicine to stop cramping when drugs are swallowed. In addition, she testified that the bulky, ill-fitting dress led her to suspect that Asemota might be hiding something underneath her clothing.
 
 
 8
 Although girdles and corsets in the suitcase of a heavy set woman wearing a bulky dress may not establish minimal suspicion when viewed in isolation, Customs Agent Barnes was also aware that Asemota had tried to avoid a second inspection and had arrived from a drug-source country. Under these circumstances, the district court did not err in concluding that the customs agent was aware of sufficient facts to support a minimal suspicion that Asemota was engaged in wrongdoing.
 
 II.
 
 9
 Asemota contends that the magistrate erred in determining that the warrant to search her residence for evidence relating to drug trafficking was supported by probable cause. We review a magistrate's determination that probable cause existed to issue a search warrant for clear error. United States v. Terry, 911 F.2d 272, 275 (9th Cir.1990)
 
 
 10
 Asemota contends that the affidavit merely show that she was a drug courier involved in a single incident of drug smuggling. She argues that the facts do not support an inference that she was a drug dealer who would have evidence of drug trafficking in her home. She asserts that the fact that she was found in possession of heroin at the Seattle-Tacoma International Airport does not establish probable cause to believe that evidence of drug trafficking would be found in her residence in Birmingham, Alabama.
 
 
 11
 Contrary to Asemota's contention, the facts set forth in the affidavit demonstrate that probable cause existed to believe that Asemota was a drug smuggler who might have evidence of drug trafficking in her residence. It contained information that she had been seen in Birmingham, Alabama in the company of a person who was suspected of being a major drug trafficker. Asemota was intercepted by customs agents attempting to smuggle 2,976.6 grams of heroin with a street value of approximately $400,000. Customs Agent Thomas Coran stated in the affidavit that his training and experience indicated that persons who "engage in the smuggling of large quantities of narcotics into the United States" commonly keep documents relating to their criminal activity within their residences.
 
 
 12
 In determining probable cause, the magistrate must make a "practical, common-sense decision, whether, given all the circumstances set forth in the affidavit before him ... there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). A magistrate is entitled to "draw reasonable inferences about where evidence is likely to be kept based on the nature of the evidence and the type of offense." Terry, 911 F.2d at 275.
 
 
 13
 We have long recognized that drug dealers keep evidence relating to their crimes where they live. Terry, 911 F.2d at 275; See United States v. Dubrofsky, 581 F.2d 208, 213 (9th Cir.1978) (heroin importers commonly have heroin and related paraphernalia at their residences).
 
 
 14
 The magistrate did not err in concluding probable cause existed to believe that Asemota was a major drug smuggler who might have heroin and other incriminating evidence in her home, including documents that might reveal the identity of her crime partners.
 
 III.
 
 15
 Asemota contends that the search warrant was unconstitutionally overbroad because it did not guide the executing officers as to which items were subject to seizure. We review de novo the district court's finding that a warrant described the items to be seized with sufficient particularity. United States v. Hayes, 794 F.2d 1348, 1354 (9th Cir.1986), cert. denied, 479 U.S. 1086 (1987).
 
 
 16
 To satisfy the fourth amendment, a warrant must be specific enough to enable an executing officer to identify the items subject to seizure. The purpose of this requirement is to prevent "exploratory rummaging in a person's belongings." United States v. McClintock, 748 F.2d 1278, 1282 (9th Cir.1984), cert. denied, 474 U.S. 822 (1985). In determining whether a search warrant is sufficiently precise, we have considered the following: (1) whether probable cause exists to seize all items of a particular type described in the warrant; (2) whether the warrant sets out objective standards by which executing officers can differentiate items subject to seizure from those which are not; or (3) whether the government was able to describe the items more particularly in light of the information available at the time the warrant was issued. United States v. Spilotro, 800 F.2d 959, 963 (9th Cir.1986). In Spilotro, we held that the warrant was overbroad because it "authorize[d] wholesale seizures of entire categories of items not generally evidence of criminal activity, and provide[d] no guidelines to distinguish items used lawfully from those the government had probable cause to seize." Id. at 964.
 
 
 17
 The search warrant in the instant matter authorized the seizure of the following:
 
 
 18
 1) Papers, tickets, notes, schedules, receipts, and other items and objects including but not limited to air travel vouchers, motel/hotel embossed articles, correspondence with travel agencies and air travel tickets which do or tend to establish foreign travel and/or domestic travel in interstate commerce.
 
 
 19
 2) Address and/or telephone books and papers and other writings reflecting names, addresses, and/or telephone numbers as well as bills and paid receipts reflecting telephone toll records, andy [sic] and all of which reflect the names, addresses, and telephone numbers of aliases or code names of both known and unknown co-conspirators in the above described criminal activity, as well as other indicia of telephone usage and service including pay telephone usage which indicia includes, but is not limited to, telephone credit cards, large amounts of nickel, dime and/or quarter currency, and telephone paging devices which are carried on or about the persons to receive incoming notice or messages and which are activated by telephone usage.
 
 
 20
 3) Any and all other material evidence of violations of Title 21, United States Code, Section 952, and Title 19, United States Code, Section 545, together with other fruits, instrumentalities and evidence of crimes at this time unknown.
 
 
 21
 (emphasis added)
 
 
 22
 This warrant is overbroad for the reasons set forth in Spilotro. Initially, the warrant describes many items which are generally not evidence of criminal activity. Papers, notes, schedules, address books, bills, and large amounts of nickels, dimes and quarters are generic categories which include items with many innocent uses. The warrant failed to set forth guiding standards the executing officers could follow in choosing what items could be searched for and seized.
 
 
 23
 The warrant also failed to narrow the generic categories of items subject to seizure by identifying the criminal activity for which the items were sought. See United States v. Washington, 782 F.2d 807, 818 (9th Cir.1986) (search authorizing the seizure of records, notes and documents indicating involvement and control of prostitution activity narrow enough to satisfy the particularity requirement of the Fourth Amendment). We have determined that the particularity requirement of the Fourth Amendment is not satisfied if a warrant only recites a statute without stating the criminal activity involved. See United States v. Cardwell, 680 F.2d 75-76-78 (9th Cir.1982) (warrant authorizing the seizure of "corporate books, records, including but not limited to cancelled and duplicate checks, check stubs, journals, ledgers.... which are fruits and instrumentalities, of violations of 26 USC § 7201" was overbroad).
 
 
 24
 The search warrant in the instant matter did not describe any criminal activity. It merely recited a statute without describing the prohibited conduct. Accordingly, the warrant lacked sufficient particularity to satisfy the Fourth Amendment.
 
 
 25
 A constitutionally overbroad warrant can be cured by an accompanying affidavit that more particularly describes the items to be seized. United States v. Luk, 859 F.2d 667, 676 (9th Cir.1988). However, the affidavit must be expressly incorporated into the warrant by reference. In this matter, the warrant did not expressly incorporate the affidavit. We conclude that the district court erred in ruling that the search warrant was not overbroad.
 
 IV.
 
 26
 The government contends that we may uphold the denial of the motion to suppress the items seized pursuant to the search warrant because the record shows that the officers who executed the warrant acted with an objective, good-faith belief it was valid. See United States v. Leon, 468 U.S. 897 (1984). We may uphold a district court's ruling on any basis presented by the record. In other words, we may affirm a correct result even if the district court reached that result for the wrong reasons. United States v. $25,000 U.S. Currency, 853 F.2d 1501, 1504 n. 1 (9th Cir.1988); Bruce v. United States, 759 F.2d 755, 758 (9th Cir.1985). We review de novo the question whether the good-faith exception to the exclusionary rule applies to a search conducted pursuant to a challenged warrant. United States v. Ramos, 923 F.2d 1346, 1353 (9th Cir.1991).
 
 
 27
 A constitutionally overbroad warrant can be cured by an accompanying affidavit that more particularly describes the items to be seized. Luk, 859 F.2d at 676. In Luk, an overbroad search warrant was accompanied by an affidavit, but the warrant failed to explicitly incorporate the affidavit. Id. The affidavit at issue in Luk, which was prepared by Agent Koplick, provided the specificity that the search warrant lacked. Agent Bammer, who was specifically authorized to execute the warrant, read the affidavit before the search and apprised the officers conducting the search what items were properly within the scope of the search. Id. at 677.
 
 
 28
 In Luk, we determined that "[t]he absence of any contention that the officers seized any items other than those relating to transactions described in the affidavit indicates that the agents relied on the more particular affidavit." Id. We also relied on the officer's seizure of items within the proper scope of the search as evidence of their good faith. Id. Accordingly, we concluded that the warrant, construed in conjunction with the affidavit, was not impermissibly overbroad. Id. at 678.
 
 
 29
 In this matter, the accompanying affidavit, which described the suspected criminal activity in detail, provided the specificity that the search warrant lacked. The affidavit described in detail the criminal activity Asemota was suspected of committing. Customs Agent Coran, who drafted the affidavit, also conducted the search at the Asemota residence. He was, therefore, aware of the items relevant to Asemota's drug smuggling activities.
 
 
 30
 The record shows that Customs Agent Coran seized items which were related to the criminal activity described in the affidavit. The fact that only items connected with drug trafficking activities were seized supports an inference that he acted in good faith.
 
 
 31
 In light of the agent's reasonable reliance on the criminal activity described in the affidavit, we conclude that the evidence seized from Asemota's residence was admissible under the good-faith exception to the exclusionary rule.
 
 V.
 
 32
 Asemota contends that the district court abused its discretion by allowing Assistant Sheriff Elbert Robins to testify that the Jefferson County Sheriff's Department would have "made every effort to check on the children of any deputy that's employed with our department that requests so." On redirect examination, Asemota testified that she did not think that the Sheriff's Department would have helped her if her children were threatened. The record reveals the following colloquy:
 
 
 33
 Q: Did you think when you were back in Singapore, did you think that in any way the sheriff's department would help you if you called them?
 
 
 34
 A: No, I did not. I thought that by the time I got to the airport they would be waiting for me with my dismissal papers.
 
 
 35
 We review a district court's decision to admit testimony for abuse of discretion. United States v. Marashi, 913 F.2d 724, 729 (9th Cir.1990). The testimony of Assistant Sheriff Robins was relevant and admissible to impeach Asemota's testimony that the Sheriff's Department would not have come to her aid if her children were threatened. See United States v. Beltran-Rios, 878 F.2d 1208, 1212 (9th Cir.1989) (where defense counsel introduces misleading testimony, the government may introduce evidence to demonstrate its falsity). Accordingly, the district court did not abuse its discretion in admitting the impeaching evidence.
 
 VII.
 
 36
 Asemota argues that the district court abused its discretion in admitting DEA Agent Edward Madonna's testimony that drug couriers are usually compensated for their services. Asemota contends that the testimony was irrelevant in determining Asemota's motivation for engaging in the transport of illegal drugs.
 
 
 37
 We disagree. The government introduced evidence that Asemota was having financial difficulties to rebut Asemota's defense that she smuggled drugs involuntarily because she feared for the safety of her children. The testimony that most drug couriers are paid was relevant to rebut Asemota's testimony that she had not transported the drugs for financial gain. See Beltran-Rios, 878 F.2d at 1212. The district court did not abuse its discretion in admitting Agent Madonna's testimony to rebut Asemota's assertion that she had not smuggled drugs for financial gain.
 
 
 38
 AFFIRMED.
 
 
 
 *
 Honorable Harold M. Fong, Chief Judge United States District Court for the District of Hawaii, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3